COMMERCIAL AND FARMERS NATIONAL BANK OF BALTIMORE v. JUNIUS DAVIS and JAMES A. LEAK, Receivers of the Bank of New Hanover.

*Banks and Banking—Insolvent Bank—Principal and Agent— Collections—Trustee and Cestui Que Trust—Conversion— Creditor and Debtor.*

Plaintiff bank, being ignorant of the insolvency of the Bank of New Hanover, sent to it items for collection and remittance. New Hanover Bank mingled the proceeds of the collections with its own funds, so that the specific money received on the items so sent by plaintiff bank could not be traced. No mutual account was kept between the parties. Before remitting for the items so collected New Hanover Bank failed, and there was money enough on hand and turned over to the Receiver to pay the plaintiff's claim: *Held*, that upon the collection of the items and the mingling of the proceeds with the assets of the New Hanover Bank, the relation of principal and agent, trustee and *cestui que trust* ceased, and that of principal and debtor arose between the parties, and plaintiff became a simple contract creditor with no preference over other creditors, and it is immaterial, in such case, whether or not the officers of New Hanover Bank knew that it was insolvent.

This was a petition in the cause entitled *S. McD. Tate, Treasurer, et al. v. the Bank of New Hanover et al.* Jury trial was waived. By consent his Honor, *Brown, J.*, at April Term, 1894, of New Hanover Superior Court, found the facts as follows, to-wit: "Petitioner is a National bank, doing business in the city of Baltimore. The Bank of New Han-

over was a State bank, doing business in the city of Wilmington, which failed, and Junius Davis was appointed Receiver, June 19, 1893. The petitioner, for some months prior to the failure of said bank, had been sending drafts and other commercial paper to the Bank of New Hanover for collection, each collection being enclosed in a letter exactly like the one herewith sent marked Exhibit " A." Said banks kept no mutual deposit account with each other, but upon collection of commercial paper sent to it the Bank of New Hanover was in the habit of mingling said funds received with all its other funds, and in due time remitting its own check upon its correspondent in New York or elsewhere to the petitioner in settlement of collections, in accordance with the usual custom of banks dealing with each other where no mutual deposit account is kept. The Bank of New Hanover, it is admitted, is indebted to the petitioner in the sum of $6,788.32, for which the petitioner claims a priority over other creditors, which right of preference is denied upon the part of the Receiver. This sum represents the amount collected by the Bank of New Hanover on account of the petitioner between June 9 and June 17, 1893. Said sum was received as follows: In cash, June 10, 1893, $50.60; in cash, June 12, 1893, $600; credited to the Bank of New Hanover by other banks with which Bank of New Hanover kept mutual deposit accounts, and to which some of these collections were forwarded, $841.43. The amount of collections made by the Bank of New Hanover between said dates, payments being made by the drawee giving checks on Northern banks, Bank of New Hanover and Atlantic National Bank of Wilmington, $5,909.07. The collection charges made by the Bank of New Hanover, as appears on its books, $18.78 being deducted, leaves balance due petitioner, $6,788.32. Of the said sum of $5,909.07 aforesaid, the sum of $252.69 was collected as follows: Some days prior to June 7, 1893, the Bank of New Hanover had received from plaintiff out-of-town col-

lections, $252.69, which it had immediately sent out to its several correspondents. On the arrival of the mail, 6 P. M., June 17, or thereabouts, Bank of New Hanover received from its correspondents checks on New York and other cities amounting to $252.69 in payment of the aforesaid collections sent to them. When these checks were received the night of 17th of June, the clerks in the Bank of New Hanover, in accordance with the usual custom, forwarded said checks same night by next mail, which left Wilmington for New York about 11 P. M., to its New York correspondent to be placed to its credit, the same being payable to Bank of New Hanover. The collections received from the plaintiff had been entered on the collection book kept by the Bank of New Hanover, and upon receipt of these checks on the night of 17th from its out-of-town correspondents the collections represented by them were marked paid on the collection book. It was the habit of the clerks in said bank to remail checks, post up the collection books by checking up collections paid every night, and especially every Saturday night, so as to utilize the night mail.

The petitioner also claims another item, $1,266.37, June 9th, 1893, as set out in section 4 of the petition. Section 4 of the petition is admitted. In addition to the facts stated in section 4, the following facts are found in reference thereto:

The said sum represents checks drawn by the Bank of New Hanover on its New York correspondent, Importers and Traders Bank. At the date of failure the Bank of New Hanover had a deposit account with said Importers and Traders Bank, and on June 19th there was over $1,266.37 to credit of Bank of New Hanover in the Importers and Traders Bank. But the Bank of New Hanover owed the Importers and Traders Bank about $150,000 borrowed money, not appearing on the cash deposit account. There was a written agreement between the Bank of New Hanover and Importers and Traders Bank, whereby the latter

could hold cash balances for any debt due it, or to become due it, by the Bank of New Hanover, which said agreement was in force and effect at the time of the failure of the Bank of New Hanover and for a number of months prior. At the date of failure of Bank of New Hanover it had drawn $69,000 checks upon its deposit account with the Importers and Traders Bank, which remained unpaid. The cash balance in the hands of the Importers and Traders was not sufficient to pay half of the checks drawn on it.

W. L. Smith, cashier of the Bank of New Hanover, testified as follows: "Bank of New Hanover had no special agreement with petitioner and kept no mutual deposit account. Petitioner sent us collections always enclosed in a collection letter exactly similar to the one in evidence, marked Exhibit 'A'. Collections were entered on our collection book, and when collected were marked up 'paid' and remittance made by draft of the Bank of New Hanover on its New York correspondent, payable to the petitioner or for whomsoever the collection had been made.

"This work was generally done at night and outside of banking hours. The Bank of New Hanover and no other bank kept its collections received separate from any other money. All of our funds were kept together in one place. Bank of New Hanover had no special deposit for plaintiff nor for anyone else. The moneys were constantly changing every day. This is the custom of all banks. Bank of New Hanover failed to open on Monday morning, June 19th. As a matter of fact it was insolvent on June 17th, but I did not believe it was insolvent. It is impossible to separate or identify any money collected for the plaintiff. All banks universally keep all money together. The Bank of New Hanover, at the time of its failure, had $25,000 in cash on hand."

The Court finds the facts testified to by said Smith to be true, except in respect to the statement that on June 17th

said cashier did not believe Bank of New Hanover to be insolvent. In respect to this statement, the Court does not find the fact as to the cashier's knowledge and belief one way or the other, because the Court is of the opinion that it is immaterial.

It is admitted that at the date it failed Bank of New Hanover owed other banks and bankers $175,000 for collections made under similar circumstances and relations, as plaintiffs claim.

It is admitted that in addition thereto it owes $418,000 interest-bearing certificates of deposits, and deposits subject to check $266,000. That its nominal assets at the time of its failure amounted to about $1,600,000, and it is admitted by the petitioner that all collections made by the Bank of New Hanover for petitioner and others were, in all cases, covered into and mixed with its general funds, and that at the time of its failure it was and is still impossible to identify or separate collections made for petitioner from any other of its funds. Petitioner then offered evidence tending to prove that the nominal assets of the Bank of New Hanover during the month of June, 1893, were about $1,600,000, and its liabilities at that time about $900,000, exclusive of its capital stock; that the character of these assets was such that they were not worth more than a fourth of their face value; that debts were due the bank by three or four persons, aggregating about $400,000, which were utterly worthless, and that the President and Cashier were largely indebted to the bank, or enterprises in which they were largely interested. This evidence was offered for the purpose of showing that the president and cashier must have known during the month of June, 1893, that Bank of New Hanover was utterly insolvent, although said bank continued to keep open and to receive deposits and to receive collections from petitioner and others. The Court being of the opinion that the fact that the Bank of New Hanover kept open during the month

BANK v. BANK.

of June, 1893, that it received deposits, made collections for petitioner and others, and did a general banking business as usual, although its officers knew it was utterly insolvent, would not, in law, give petitioner priority in the distribution of assets, although its officers might possibly be individually liable, that the liability of its officers is not to be determined in this proceeding. The evidence was therefore excluded, to which petitioner duly excepted. It being admitted that the collections sent by petitioner to the Bank of New Hanover were all enclosed in collection letters similar to Exhibit "A," and it being further admitted that the proceeds of said collections cannot be identified or traced or separated from the other funds of the Bank of New Hanover, and could not have been at the time of its failure and the taking possession by the Receiver, the Court adjudges that the Bank of New Hanover is indebted to the petitioner in the sum admitted to be due, to wit, $5,788.32; that said sum is provable and shall be paid by the Receiver pro rata with the other debts of the bank; that petitioner has no priority or right of preference. It appearing that the Receiver has always admitted the amount of said debt, and this proceeding is brought solely to establish a right of preference, it is adjudged that the cost thereof be taxed against petitioner.

"Exhibit A" was as follows: .

COMMERCIAL AND FARMERS NATIONAL BANK,

Baltimore, June 6, 1893.

W. L. SMITH, ESQ., *Cashier,*
Wilmington, N. C.

. DEAR SIR: Your favor of the 31st received, with inclosure. Credited $1,026.25.

Entered for collection_____.

I enclose for collection_____ items as stated below.

Respectfully,        JOHN D. EARLY, *Cashier.*

| | | | | |
|---|---|---|---|---|
| Goldsboro | $10 00 | Warsaw ____ No Pro. | $ 6 | 00 |
| "        | 9 90 | Durham ____ " | 41 | 20 |
| Scotland Neck | 69 97 | Newberne___ " | 6 | 75 |
| Wilson | 17 99 | "      ___ " | 15 | 00 |
| "        | 28 91 | Rocky Mount " | 12 | 60 |
| Tarboro | 34 80 | Wadesboro__ " | 17 | 28 |
| Goldsboro | 16 25 | | | |

*Mr. J. D. Bellamy, Jr.,* for plaintiff (appellant).
*Messrs. George Rountree* and *George Davis,* for defendant.

BURWELL, J.: We find no error in the ruling of his Honor, and hold that his judgment must be affirmed. It is sufficient, we think, to cite the case of *Bank* v. *Dowd,* 38 Fed. Rep., 172, where Judge SEYMOUR has fully set out the reasons and authorities that led him to the conclusion he reached in a controversy about the assets of an insolvent National bank. Both because it is important that there shall be accord between the rules laid down by the Federal Court in regard to the assets of insolvent National banks in the hands of receivers, and those rules which are to govern the distribution of the assets of an insolvent State bank, and because.

the conclusions there reached are those to which we have come after a careful consideration of the authorities, we content ourselves with referring to the elaborate opinion filed in that case. Later decisions sustain what is there said. *Slater* v. *Mills*, 27 Atlantic Rep., 443 (a Rhode Island case); *Freiburg* v. *Stoddard*, 28 Atlantic Rep., 1111 (a Pennsylvania case); *Nonotuck Silk Co.* v. *Flanders*, 58 N. W. Rep. (a Wisconsin case).

Affirmed.