FIRST AND CITIZENS NATIONAL BANK v. THE CORPORATION COM-
    MISSION OF THE STATE OF NORTH CAROLINA and A. G. SMALL,
    LIQUIDATING AGENT IN DISSOLUTION OF THE CAROLINA BANKING AND
    TRUST COMPANY.

(Filed 30 September, 1931.)

1. **Banks and Banking H d—Where bank mingles guardianship and other
    funds its successor as guardian is not entitled to preference.**

    Where a bank, authorized by its charter to act as guardian, intermingles funds coming into its hands as guardian with funds received by it in its regular banking business, and it is impossible to separate any of the trust funds from the other funds on deposit and placed in the bank's vault, *Held:* upon the bank becoming insolvent its successor as guardian has no lien on its assets and is not entitled to a preference for the amount of the guardianship funds in an action against the liquidating agent, but is only a general creditor of the bank and entitled only to pro rate with other creditors, the guardianship funds being also protected

by the bond required by statute; the mingling of guardianship and personal funds by an individual guardian depositing the funds in a bank is distinguished.

**2. Same—Where bank endorses note to itself as guardian and becomes insolvent the minors are tenants in common therein.**

Where a bank acting under authority of its charter as guardian for certain minors is the payee of two certain notes which it endorses without recourse, one to itself as guardian for one group of minors and the other to itself as guardian for a second group of minors, and thereafter the bank becomes insolvent, *Held:* its successor as guardian for some of the second group of minors has no right, title or interest in the note endorsed for the benefit of the first group of minors, and is not entitled to recover the second note from the liquidating agent, it being only a tenant in common along with the other minors for whose benefit the note was endorsed, and the second note should be collected by the liquidating agent and the proceeds applied according to the respective rights of the parties.

APPEAL by plaintiff from *Grady, J.,* at June Term, 1931, at Chambers, in Elizabeth City, N. C., from PASQUOTANK. Affirmed.

The following judgment was rendered by the court below:

"This cause came on for hearing at the above time and place upon an agreed statement of facts, signed by counsel, which is hereto attached, and made a part of this judgment.

1. It appears from said statement of facts that the Carolina Banking and Trust Company was a domestic corporation engaged in the banking business in Elizabeth City, and that it was authorized, under its charter, and under the laws of this State, to act as guardian, administrator, or executor, in the same manner as an individual might act under the laws of this State.

2. That said Carolina Banking and Trust Company closed its doors and was taken over by the Corporation Commission on 19 August, 1930, at which time it was the general guardian, under an order of the clerk of the Superior Court of Pasquotank County, of Mattie Whitehurst and Clarence Whitehurst; and since that time it has been removed as guardian of said minors and the First and Citizens National Bank of Elizabeth City has been appointed as general guardian for said minors, and prosecutes this action in their behalf.

3. At the time of its failure and the taking over by the Corporation Commission, as aforesaid, said Carolina Banking and Trust Company, in its capacity as guardian, or executor, of various and sundry persons, had on deposit in said Carolina Banking and Trust Company, as a banking institution, the sum of $29,750.59; this sum being the aggregate of the several amounts specified and set out in article 6 of the agreed statement of facts; and of this amount the plaintiff's wards, Mattie

Whitehurst and Clarence Whitehurst, were entitled, respectively to $737.18, and $692.21, making a total of $1,429.39. All of said deposits, aggregating $29,750.29, were amply protected by a solvent bond, which had been duly executed by said Carolina Banking and Trust Company as guardian, executor, and so forth, with approved sureties, and out of which a recovery can be had at this time for the full amount due by the defendant, Carolina Banking and Trust Company, former guardian of the minor plaintiffs in this cause.

4. It will be observed that the Carolina Banking and Trust Company, as guardian of the said Mattie Whitehurst and Clarence Whitehurst, is not a party to this action; but the same is being prosecuted solely against the successor in title of the assets of the Carolina Banking and Trust Company as a banking depository of the funds hereinbefore referred to.

5. It is admitted, by all parties, that at the time of the closing of the said Carolina Banking and Trust Company, it had on hand, in cash, more than enough money to pay off and discharge all of said trust accounts, referred to in article 6 of the agreed statement of facts; and the plaintiff insists that, inasmuch as these moneys constituted a trust fund in the hands of the bank, and inasmuch as they were mingled with other moneys belonging to said bank, it is now entitled to have a decree of this court declaring that it is entitled to a preference, to the extent of its claim, over and above all other creditors of the said Carolina Banking and Trust Company, as a banking institution.

6. As the court sees it the plaintiff's contention is, in effect, that, notwithstanding the funds in question are amply secured by a bond, that the unsecured creditors and depositors of said bank must yield their rights in the premises and put themselves in the position of securities, so that their moneys may be used to. pay the plaintiff's claim, while they stand to lose what they have on deposit, or the amount owing them by said Carolina Banking and Trust Company, at least to the extent of such preference.

The court is unable to follow the reasoning of the plaintiff. There was no contract, according to the agreed statement of facts, between the parties, which would set aside any particular item of the funds in question so as to give to the plaintiff a particular lien thereon, or a preference over the other creditors; but according to the facts as agreed, the plaintiff and its predecessors in office are simply unsecured creditors of said Carolina Banking and Trust Company, in its character as a bank; and therefore, it stands in a similar position to the defendants as successors in title to the assets of said bank; and it is therefore,

Ordered and adjudged that the plaintiff has no preference and that it is simply an unsecured creditor of the defendants, and entitled to pro-rate in the funds in hand, along with the other unsecured creditors.

It appears from article 10 of the agreed statement of facts, that at the time the Carolina Banking and Trust Company closed it's doors, it had in its possession two certain notes, one in the sum of $4,000, dated 29 July, 1929, payable 27 October, 1929, to the order of Carolina Banking and Trust Company, and endorsed, 'Without recourse to Carolina Banking and Trust Company, guardian for Eddie Rhodes, Murden Rhodes, Elvy Rhodes and Cecil Rhodes, or order, and any surplus to the guardian account of McKinney heirs': said note being secured by the pledge of a note for $5,000, which note was secured by real estate. The second note was executed by S. G. Scott, in the principal sum of $6,000, dated 6 November, 1928, and payable 2 September, 1929, to the order of the Carolina Banking and Trust Company, and endorsed 'Without recourse to Carolina Banking and Trust Company, guardian for Clarence Whitehurst, Mattie Whitehurst, Fannie Tadlock, Ira Tadlock, Cora McKinney, and others,' all of which will appear by reference to article 10 of the agreed statement of facts.

The court is of the opinion, and so adjudges, that the plaintiff has no right, title or interest in and to the first note above mentioned; and that as to the second note, for $6,000, the plaintiff's interest in said note is only that of a tenant in·common along with 14 other minors, who are named in said article 10 of the agreed statement of facts; and that, therefore, the plaintiff is not entitled to said note, but that it is the duty of the defendant to collect the same and pay out the proceeds derived therefrom to the parties in interest, according to their respective rights, as set out in the agreed statement of facts.

It is further ordered and adjudged that the costs· of this action be taxed against the plaintiff."

To the foregoing judgment, the plaintiff excepted, assigned error and appealed to the Supreme Court.

*J. H. LeRoy, Jr., and McMullan & McMullan for plaintiff.*
*Thompson & Wilson for defendant.*

CLARKSON, J. Were the funds in the hands of the Carolina Banking and Trust Company, former guardian of plaintiff guardian's wards, divested of their character as trust funds, when placed or deposited by said bank in its own vaults, under the circumstances of this case? We think so.

The agreed facts show: "That, when so placed or deposited, the moneys received belonging to one of the estates aforesaid was not kept

separate and distinct from the moneys belonging to the other estates aforesaid, or from the moneys received by said bank in the usual course of its general banking business—all such moneys being commingled in the vaults of said bank."

"It is a well settled general rule that a receiver of a bank in which a fund impressed with a trust was deposited cannot be required to repay it in preference to the claims of other creditors, unless the trust fund can be identified, or traced into some other specific fund or property. Still it is held that the identical money deposited need not be traced into the receiver's hands where the funds received by him are in any event increased by the amount of the deposit, and it has also been held that it will be presumed that enough of the money in the bank's possession when it closed its doors, to satisfy such fund, belongs to the trust; and that, if the balance on hand is not equal to such fund, the entire balance will be turned over to the beneficiary." 3 R. C. L., "Banks," p. 554, sec. 181, in part.

We find the following stated in 7 C. J.—Banks and Banking—p. 633, sec. 308(5): "With regard to the effect of deposits of trust funds the authorities are not in entire accord. According to one view which appears to prevail more generally deposits made by trustees, executors, administrators, assignees, agents, public officers, and other persons who are serving as fiduciaries are usually considered as simply general deposits, and if the bank fails to pay them, the beneficiaries have no peculiar claims or rights over other creditors, but must share like other creditors; but it has also been held that the receipt by a bank of a trust fund, with the knowledge of its trust character, impressed the assets of the bank, which were increased to that extent, with a trust for the payment of such fund."

In *Bank v. Davis,* 115 N. C., 226, the following principle is laid down: "Plaintiff bank, being ignorant of the insolvency of the Bank of New Hanover, sent to it items for collection and remittance. New Hanover Bank mingled the proceeds of the collection with its own funds, so that the specific money received on the items so sent by plaintiff bank could not be traced. No mutual account was kept between the parties. Before remitting for the items so collected New Hanover Bank failed, and there was money enough on hand and turned over to the receiver to pay the plaintiff's claim; *Held,* that upon the collection of the items and the mingling of the proceeds with the assets of the New Hanover Bank, the relation of principal and agent, trustee and *cestui que trust* ceased, and that of principal and debtor arose between the parties, and plaintiff became a simple contract creditor with no preference over other creditors, and it is immaterial, in such case,

whether or not the officers of New Hanover Bank knew that it was insolvent." (Headnote) *Bank v. Davis,* 114 N. C., 343.

The record discloses that "the funds in question are amply secured by a bond."

In *Roebuck v. Surety Co.,* 200 N. C., at p. 202, the following observation is made: "The bank, as guardian, in not investing the funds of its ward, but intermingling it with other funds of its bank, was faithless to the trust reposed in it; and its bondsman, the defendant, must suffer the loss for such faithlessness."

This Court has adopted the "well settled general rule" set forth in R. C. L., *supra,* and the "view which appears to prevail more generally" set forth in C. J., *supra.*

The plaintiff contends: "It is admitted that, from and after the receipt by the Carolina Banking and Trust Company, as guardian, of the various trust funds set out in the agreed facts until the bank was taken over for purposes of liquidation, there was, in the vaults of the bank, an amount of cash in excess of the aggregate of such trust funds. Upon this admission, it is respectfully submitted that the trust funds have been sufficiently identified or traced into the hands of the defendant as to permit recovery." We cannot so hold.

"The general rule where the bank has completed the collection and mixed the funds with its own is that the bank is no longer a trustee but simply a debtor, and that the owner of the paper cannot claim a preference out of its assets. Some recent cases, however, following the doctrine of *Knachbull v. Hallett,* L. R., 13, Ch. Div., 696, hold that the court may separate the trust fund from the general assets of the bank although they reached the hands of the assignee in an indistinguishable mass." *Sayles v. Cox,* 32 L. R. A., at p. 719 (note).

This matter is so thoroughly considered in an Alabama decision, that we copy fully from that case, as it follows the rule adopted in this State. In *Smith & Co. v. Montgomery,* 95 Sou. Rep., p. 292 (209 Ala., p. 100), speaking to the subject: "There are quite a number of cases holding that a principal may subject funds to his lien when the agent commingles the same with his own, or when a bank places the same to the individual credit of the agent, and a few which conform to the appellants' contention; but the contrary rule, which requires identification and more than tracing the money into a common fund held by a bank or receiver for a number of claimants, has been followed by our court, and is supported by well-reasoned cases in other jurisdictions. This identical question has been recently decided by the Pennsylvania Court, *Commonwealth v. Trademen's Trust Co.,* 250 Pa., 378, 95 Atl., 577, L. R. A., 1916C, 10, wherein the court after commenting on *Knachbull v. Hallet,* and other cases, said:

'These cases establish the general rule that where a trustee receives money from a *cestui que trust* and deposits it with his own account, and in his own name, to which account he subsequently adds and withdraws money, the *cestui que trust* may claim to the extent of his trust fund the lowest amount which was on deposit at any time during the continuance of the trust, regardless of the fact that the funds were commingled and increased or diminished from time to time. This rule is based on the theory that the trustee will not be presumed to have intended to commit a criminal act, and so long as there are funds of his own, though mixed with the trust funds, any withdrawal from the account will be considered as a withdrawal of his own money, and not that belonging to the trust, and it is only when the total amount is reduced below the amount of the trust, that this presumption is rebutted, because the circumstances preclude any other possibility. There appears to be no case in Pennsylvania where it has been decided by an appellate court that the above rule is the law of this State, nor is it necessary to decide here the precise question as to whether the trustee is an individual and deposits money in his own bank account. The trustee here is a trust company authorized by statute to receive and handle funds of others and do a general banking business. In the conduct of this business it necessarily handled trust funds belonging to a large number of persons. These funds in the present case were deposited in a general account and in this way it became impossible to say to whom any particular part belonged. The case is distinguishable from that of an individual trustee who mixes the funds of a single *cestui que trust* with his own account. In such case it can readily be determined whether and to what extent he has appropriated the trust funds to his own use. On the other hand, when a trust company deposits in a common account funds belonging to various persons, it cannot be said that the mere fact of their being on deposit at all times sufficient to meet the claim of any particular customer of the bank entitled that customer to claim it as against other claimants whose money also went into the same account. Claimant could not trace title to any particular part of the deposits and his claim can therefore rise no higher than the claim of others whose money was deposited in the same general fund.'

The present holding is supported in point by the case of *Philadelphia National Bank v. Dowd* (C. C.), 38 Fed., 172, 2 L. R. A., 480. See, also, *Commercial Bank of Baltimore v. Davis,* 115 N. C., 226, 20 S. E., 370."

On rehearing of the above case, it is said: "We can add but little to the above quotation from the *Pennsylvania case,* which is supported in point by the North Carolina and United States Court of Appeals cases, and is in line with previous utterances of this Court," etc.

General deposit, special deposit and deposit for special purpose, see *Corp. Commission v. Trust Co.*, 193 N. C., 696; *Corp. Commission v. Trust Co.*, 194 N. C., 125; *Minnis v. Sharpe*, 198 N. C., 369.

We see no error in the judgment in regard to the two certain notes the Carolina Banking and Trust Company had in its possession. For the reasons given, the judgment of the court below is

Affirmed.