July 20, 1932. The opinion of the Court was delivered by
The People's Bank of Darlington was created a corporation by the laws of South Carolina, with its principal place of business at Darlington, S.C. It had the usual powers of a bank in the conduct of a banking business, and, under the power given it by Section 3994, Civil Code 1922, it was authorized to be appointed executor of wills. In May, 1928, J.L. Michie of Darlington died, leaving of force his last will and testament, of which the People's Bank of Darlington, S.C. was appointed executor. Letters testamentary were granted the bank, which qualified June 6, 1928. During that date and the 30th day of October, 1928, the bank received and distributed funds of said estate in the regular and orderly conduct of the business of the estate. On the 30th day of October, 1928, the bank closed its doors, and G.B. Brasington was duly appointed receiver thereof and *Page 19 
is now acting in that capacity. When the bank closed its doors, it appears that there was to the credit of the estate of J.L. Michie on the bank's books the sum of $6,310.17. Brasington, as receiver, resigned the executorship of the bank of the Michie estate, and Donald E. Michie was thereupon and thereof appointed administrator cum testamentoannexo. From the general assets of the bank Brasington, receiver, paid to Donald E. Michie, administrator c. t. a., in dividends, the sum of $2,839.53. Thereafter the administrator demanded that he be paid the difference between that sum and the sum of $6,310.17, in the hands of the bank to the credit of the estate, on the ground that the bank as executor of the will of J.L. Michie held these funds in trust for the estate, and had, by mingling them with the bank's funds, committed a breach of trust, which gave the estate a lien on them, and entitled it to be in preference to general creditors and depositors. The demand was refused. Thereupon the administrator, by appropriate action, with the leave of the Court had, intervened in the original case, and set up his claim. The matter was heard by Judge Dennis on an agreed stipulation of facts. In due time he filed an elaborate decree sustaining, generally, the contention of the administrator. The appeal is from that decree.
By this appeal the Court is confronted with the application of one or the other of two principles of law or equity, both of which have long had the sanction of the Court.
The one is laid down in the utterance of an eminent jurist. Mr. Justice Woods, once an associate justice of this Court, later a Judge of the United States Circuit Court of Appeals for the Fourth Circuit, in these words:
"No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors."
So universally has this rule been accepted as a canon of the law that the case in which it arose, viz., Livingstain v. *Page 20 Columbian Banking Trust Co., 77 S.C. 305, has been published in 57 S.E., 182, 184, 22 L.R.A. (N.S.), 442, 122 Am. St. Rep., 568, and other reports and text-books.
The other rule or principle which confronts the Court is that which prescribes that one holding a fiduciary relation must keep the funds of the fiduciary estate separate and distinct from his own; if he mingle them with his own, and they can be traced, they may be recovered; in short, that the cestui que trust has a lien on all the funds of the trustee, for his funds in prior right to general creditors.
In so far as adherence to the first equitable rule referred to is concerned, it is argued that the Court has repeatedly held that there are exceptions to that rule; that the tendency is broadening toward a more liberal rule of equitable preference. In support of this contention, reliance is had upon cases lately decided by this Court. Notable among these are the cases of Ex parte Bank of Aynor, 144 S.C. 147,142 S.E., 239; Peurifoy v. Boswell, 162 S.C. 107,160 S.E., 156; Ex parte Hernlen, 156 S.C. 181, 153 S.E., 133, 69 A.L.R., 443; Bradley v. Guess, 165 S.C. 161,163 S.E., 466. In his excellent brief appellant's counsel points out that: "A reference to the South Carolina cases in which preferences have been allowed, shows that this Court has departed from its fundamental policy of denying preferences as between the various classes of depositors only where the circumstances of the particular case are such as to amount to moral fraud on the part of the bank in handling particular funds, or in all of these cases where the fraud related to securities or assets that could reasonably be identified or impounded as the particular funds or securities of the claimant, or to which the claimant was morally entitled, in specie."
This position would seem to be sustained by the leading cases of this Court on the subject, as, apparently, leading away from the equitable rule of the Livingstain case; but not in fact doing so. *Page 21 
In the case of Ex parte Bank of Aynor, 144 S.C. 147,142 S.E., 239, the case is thus stated: "The issues in this particular matter arise out of a petition filed by the Bank of Aynor, on August 10, 1926, by way of intervention in the main cause, in which it claims a preference, in the administration of the assets of the defunct bank, to the extent of $44,189.38 and interest, and a lien upon certain securitiesalleged to have been assigned and delivered to it bythe American Bank Trust Company as collateral securityto its obligation amounting to said sum." (Italics added.)
The Court found the claims of the intervener to be sustained by the evidence. The Court said further: "The American Bank Trust Company * * * recognized the fact of the existence of a trust and a violation of it; the proceeds of the notes which they misappropriated were never entered upon their books as a credit upon the account of the Bank of Aynor, as would have been done if the transaction had been considered as a deposit."
The same case sustains the claim of preference by the Bank of Aynor upon the further ground, for the reason that, "under the circumstances detailed, the funds to which it was entitled became, in the hands of the American Bank Trust Company, a trust fund which was appropriated by * * * American Bank Trust Company * * *under circumstances which * * * constituted a breachof trust with fraudulent intent * * * a theft."
In other words, the circumstances of that particular case established a trust ex maleficio.
Along with this line of thought should be read the case of Rice v. City of Columbia et al., 143 S.C. 516,141 S.E., 705.
In the case of Ex parte Hernlen, 156 S.C. 181,153 S.E., 133, 140, 69 A.L.R., 443, it appears that Mrs. Hernlen, being apprehensive of the solvency of the bank, was induced, when she came to withdraw her funds deposited in the bank, not to do so, upon the assurance of the officer of *Page 22 
the bank that it was solvent, and that he would invest her deposit of $8,000.00 in a mortgage of real estate described to her. She inspected the property, and assented that her deposit be invested in a mortgage on it. A mortgage was taken by the bank in its name, but it was for the security of moneys already due the bank, and no part of Mrs. Hernlen's money went into it — nor was the note and mortgage assigned to her by the bank. The Court said: "When the officer of the bank induced Mrs. Hernlen to allow herdeposit to remain in the bank upon his promise to invest it in a real estate mortgage, it amounted to the same thing as if he had induced her to make a deposit upon such an engagement; under either condition the deposit would constitute the corpus of a trust fund and the bank a trustee of it for Mrs. Hernlen. It is also clear that the trust was created in bad faith upon the representation, which was not true, that McCarley had made application for a loan, and upon the false promise which the officer knew at the time he could not and did not intend to fulfill — a trust ex maleficio.
It is an established principle, under the case of Ex parteBank of Aynor [supra], that the beneficiary of such a trustas this is entitled to be preferred in the distribution of the assets of a failed bank, over the general creditors."
In the case of Peurifoy, Rec'r, v. Boswell et al., 162 S.C. 107,160 S.E., 156, 162, it is said: "One should be able to locate the `res' of a fund in order to establish a trust, and be entitled to priority payment, or he must establish the existence of a trust ex maleficio. In the case referred to the doctrine was declared that there was a difference between the beneficiary of a trust ex maleficio and the beneficiary of a simple constructive trust. In the one the beneficiary is entitled to a preference in the distribution of the assets, but in the other he only shares in the assets as a general creditor of the bank."
In the case of Bradley, Rec'r, v. Guess, 165 S.C. 161,163 S.E., 466, 472, filed February 13, 1932, the Court *Page 23 
said: "It appears from the record that the three banks from which the Bank of Denmark secured the loans for which the bonds were pledged as security realized from their sale, in the aggregate, $9,512.15 more than the total amount of the loans, and that this difference was paid to and received by the Bank of Denmark and appropriated by it to its own use. Under these conditions, that amount was impressed with a trust ex maleficio in favor of Guess, and he is entitled to a preference to that extent in the distribution of the bank's assets."
It would seem, then, to be plain that it is the holding of this Court that, in order to take a case out of the rule laid down in the Livingstain case, for the equitable distribution, ratably, of the assets of an insolvent corporation, there must be a constructive trust (this has no application to an express trust) in which the claimant can put his hands on the "res," or he must establish a trust ex maleficio.
It is patent in the case before the Court that there is in it no element of bad faith, or moral wrong, which would create a trust ex maleficio. It is equally plain that the petitioner here cannot point out the special fund, or res, to which a constructive trust could attach to give him a preference in the distribution of the assets of the bank, now in the hands of the receiver. It follows that the dominant question left for our consideration is this: Does a bank which has been appointed executor of the will of a testator, and which receives funds of an estate, which it deposits, or which are already deposited in the bank, and mingled with the general deposits of the bank, occupy a different status from that of a personal executor? Is the bank's liability as executor different from that of a personal executor who mingles the funds of the estate with his own?
Before the passage of the Act of 1911, now embodied in the Civil Code 1932 as Section 7864 et sequitur, a bank could not become the executor of a will in this State. The theory of the common law was that a corporation could not *Page 24 
be thus appointed because it could not take the oath necessary in qualifying. This difficulty was obviated by the provision that the oaths necessary to be taken, and the papers necessary to be signed, should be taken and signed by any officer of the corporation duly authorized thereto.
The corporation so authorized may be appointed "under the same circumstances, in the same manner, and subject to the same control by the Court having jurisdiction of the same as a legally qualified person."
No special provision is made for the giving of security except that Section 7865 declares that: "The capital stock of such corporation, with the liabilities of the stockholders thereunder, shall be held as security for the faithful performance of the duties undertaken by virtue of the preceding section, or of any similar provision of law; and, except as provided in Section 7867, no surety shall be required upon the bonds filed by such corporation."
Section 7867 provides that any person in interest may apply to the Court to require the corporation so appointed to give additional security.
Thus the question stood until the passage of the Act approved March 28, 1930, Act No. 821, General Statutes 36, p. 1367 (now Code 1932, §§ 7905-7910). These are the provisions of that Act:
Section 1. "All State banks, trust companies, and fiduciary corporations doing a trust business, shall be subject to examination by the State banking department. * * *"
Section 2. "Banks, trust companies, or corporations acting in a fiduciary capacity shall segregate all assets held * * * and shall keep a separate set of books or records," etc.
Section 3. "Funds received or held in the trust department awaiting investment or distribution shall be secured to the trust department if such funds have been depositedin its own bank, or in any other banking corporation," etc. *Page 25 
Section 4. "Funds held by the trust department shall be invested as soon as practicable. * * *"
Section 5. "Investments of each individual trust shall be kept separate and distinct from all other trusts and plainly marked. * * *"
Section 6. "The securities of the trust department * * * shall be in the joint custody of two or more officers" appointed to that duty.
With this preliminary setting forth of the statutory law touching our subject, let us return to the consideration of our question.
We may premise the discussion by saying that there can be no doubt of the law in this State to the effect that, if a personal executor, administrator, guardian, or trustee mingle the funds of the estate with his own funds, and loss ensue to the estate, the fiduciary must make good from his own funds. Very many authorities are quoted in the briefs and circuit decree in support of this admitted postulate.
Does the same result follow when the executor is a bank?
Under the authority of the Act of 1911, now in the Civil Code as Section 7864, any State bank in South Carolina of $25,000.00 capital could become the executor of the will of a testator. There were very many such banks then existent in the State, and many of them did become such executors. The members of the General Assembly knew these facts, and it is a safe assumption that they knew that the funds of such estates would be deposited in the executor bank itself without separating them from the funds of other depositors, except as the books of the bank should keep separate accounts. The legislators were bound to have known that such funds were not secured except by the statutory pledge (Section 7865), of the "capital stock of such corporation, with the liabilities of the stockholders thereunder," yet the Legislature did nothing to change these conditions, till, when as conditions grew worse and bank failures became *Page 26 
a thing of daily occurrence, they undertook to lock the door after the horse had been stolen; they passed the Act of 1930. The terms of that Act have been epitomized above.
What does that Act undertake to do?
(1) To subject corporate fiduciaries to examination.
(2) To require them to segregate all fiduciary assetsfrom assets of the bank and to keep separate books.
(3) To secure fiduciary funds awaiting investment ordistribution if such funds have been deposited in its ownbank or any other banking institution.
(4) To require such corporate fiduciaries to invest such funds as soon as practicable in accordance with the instruction creating the trust, or the law of the State governing such investments.
(5) The investment of each individual trust must be kept separate and distinct from all other trusts and plainly marked.
(6) Provides for the custody of securities in which funds are invested.
(7) Repealing clause.
(8) The Act to take effect on its approval.
The occurrences out of which this controversy arose occurred in 1928. The Act of 1930 has no retroactive effect. The law as it was in 1928 governs. If the law was then what respondent claims, why was it necessary to enact the law of 1930? If the bank might not in 1928 deposit fiduciary funds with other funds deposited therein, why was it necessary to say to the banks in like circumstances, you must segregate all fiduciary assets from the assets of the bank? Why say that funds awaiting investment or distribution must be secured to the trust department, ifsaid funds have been deposited in your bank or any other bank, if it was unlawful for the executor bank to deposit such funds in its own bank? It seems clear that, when Section 7864 et seq. (Act 1911) was passed, the General Assembly was of the opinion that it had provided for the security *Page 27 
of such funds by pledging the capital stock of the bank and the liabilities of the stockholders as such security.
When the Act was passed, banks were almost sacrosanct in the eyes of the people of the State. The lawmakers, when they granted them power to become executors, administrators, guardians, and trustees, must have realized that they were creating for them a different status in the law than that of an individual executor, but had faith in their fidelity and the security of the funds intrusted to them. The epidemic of bank failures which followed in the years preceding 1930 showed them the fallacy of their faith and induced the passage of the Act of 1930, which accurately defines the duties of such fiduciaries in the handling of trust funds.
Conceding, without reservation, the correctness of the position of the liability of the personal executor who mingles the funds of the estate with his own funds to account for any loss, let us consider this present case.
First, it must be borne in mind that, when Mr. Michie died, the funds now in dispute were already in the bank — deposited there by him. When the bank qualified as his executor, it simply transferred these funds on the books of the bank from Mr. Michie's account to its account as executor. This was June 6, 1928. It had a year in which to settle and distribute the estate. The bank closed its doors October 30, 1928. The bank had a right to keep on hand such funds as were necessary to defray current expenses of the estate, the expenses of administrating the estate, preferred claims, such as expenses of last illness, doctor's bills, burial expenses, etc. In these circumstances, did the conduct of the bank saddle upon the assets of the bank a claim in favor of Michie's estate, higher in right and equity than the claims of other depositors and general creditors?
We have sought in vain in the decisions of the Courts of this State for an answer to this question. The briefs of *Page 28 
counsel and the Circuit decree bristle with the citation of authorities upon the main question and the many unnecessary subsidiary questions. It is not possible in the time of the Court to review all of them, even if the Court had access to all of them. We have examined a number of them and have examined others on our own initiative.
In Roebuck v. National Surety Co., 200 N.C. 196,156 S.E., 531, 534, it appears that Martin County Savings 
Trust Company, a banking corporation, was the guardian of W.A. Roebuck, a minor. The National Surety Company was surety on the guardianship bond. The guardian bank received funds of its ward and mingled them with the other funds of the bank. It closed its doors and went into the hands of a receiver. The ward, by leave of Court, intervened in the main case, and asked that the receiver be adjudged to pay to him in full his funds received by the bank. The surety on the guardianship bond was made a party to the proceeding. The Supreme Court of North Carolina said:
"We must bear in mind that the Martin County Savings Trust Company was doing a banking business and also under its charter acting as guardian of W.A. Roebuck. It took the guardian funds and intermingled them with the bank's funds. It had no more right to do this than an individual. * * *
"But, if the property of the ward is mingled with that of the guardian in such a way that its identity is lost, the ward has no rights superior to those of general creditors," citingWood v. Citizens' Bank, 199 N.C. 371, 154 S.E., 623.
This is in accord with the rule of force in this State.
Further from the above case: "The bank, as guardian, in not investing the funds of its ward, but intermingling it with other funds of its bank, was faithless to the trust imposed in it; and its bondsmen, the defendant, must suffer the loss for such faithlessness."
But let it be remembered that it did not give the ward a preference over the other depositors and general creditors of the defunct bank in the distribution of its assets. *Page 29 
In the case of First and Citizens National Bank v. CorporationCommission et al., 201 N.C. 382, 160 S.E., 360, the Supreme Court of North Carolina held this, quoting syllabus: "Minor's funds in possession of bank as general guardian when commingled with its general funds held divested of character as trust fund, precluding preference on insolvency."
From the body of the opinion we take this: "The agreed facts show: `That, when so placed or deposited, the monies received belonging to one of the estates aforesaid was not kept separate and distinct from the monies belonging to the other estates aforesaid, or from the monies received by said bank in the usual course of its general banking business — all such monies being commingled in the vaults of said bank.'"
Further in the same case: "This matter is so thoroughly considered in an Alabama decision that we copy fully from that case, as it follows the rule adopted in this State. InSmith Co. v. Montgomery, 209 Ala., 100, 95 So., 290,292, speaking to the subject:
"`There are quite a number of cases holding that a principal may subject funds to his lien when the agent commingles the same with his own, or when a bank places the same to the individual credit of the agent, and a few which conform to the appellants' contention; but the contrary rule, which requires identification and more than tracing the money into a common fund held by a bank or receiver for a number of claimants, has been followed by our Court, and is supported by well-reasoned cases in other jurisdictions. This identical question has been recently decided by the Pennsylvania Court, Commonwealth v. Tradesmen'sTrust Co., 250 Pa., 378, 95 A., 577, L.R.A., 1916-C, 10.'"
Thompson v. Orchard State Bank et al., is a Coloradocase reported in 76 Colo., 20, 227 P., 827, 828, 37 A.L. R., 115. The administrator sought to recover from a bank *Page 30 
in which he had deposited estate funds upon a time certificate given him by it, on the ground that the bank knew that these were trust funds which it had mingled with its other funds. The Court refused to impress the funds of the defunct bank with a trust in favor of the administrator; it said: "The facts in the instant case cannot be distinguished in any material particular from the facts in Officer v. Officer,120 Iowa, 389, 98 Am. St. Rep., 365, 94 N.W., 947, where the Court held that the fact that plaintiff was a trust creditor did not of itself entitle him to preference over other creditors, that the deposit was rightful, and the relation of debtor and creditor was created.
"In Paul v. Draper, 158 Mo., 197, 81 Am. St. Rep., 296, 59 S.W. 77, it was held that a fund deposited in a bank by a guardian of minors, though known by the bank to be deposited by him as trustee, could not be paid in preference to the claims of other depositors; that it was a general deposit in the absence of evidence making it a special one, and, no misappropriation having been intended or accomplished, the owner of the fund became a creditor of the bank, and stood upon the same footing as other general depositors in the bank and entitled to no preference; that `the bank simply became indebted to him in his official capacity, and he took the risk of being able to collect it when he required it.' So here, if the deposit was rightful, there appears no reason why plaintiff is entitled to a preference over other general depositors in the bank."
It is true that this is a case in which a personal administrator deposited the funds with the bank. But, read in connection with the holding of the Pennsylvania case, supra, that the bank, the trustee, did no wrong when it deposited the funds in its own bank with the funds of other depositors, the decision has an enlightening effect.
In the case of Leach v. Farmers' Savings Bank, an Iowacase reported in 205 Iowa, 114, 213 N.W., 414, 217 N.W., 437, 56 A.L.R., 801, it was held that funds which the *Page 31 
bank held as administrator, and which had been mingled with the funds of the bank, could, upon the insolvency of the bank, be recovered of the receiver, as trust funds. But that decision is rested upon the statute of the State authorizing the appointment of banks and trust companies as administrators, guardians, and trustees, which statute directs that the property and funds of the trust estate shall be kept separate from the funds of the institution and shall not be liable for its debts. Our statute of 1930 is modeled along the same lines.
In the annotation to the Leach case, supra, are the reports of opinions from a number of jurisdictions of illuminating value. We cite these:
"The Court holds in the reported case (Leach v.Farmers' Sav. Bank) that the fact that the bank treated money received by it as administrator, as a deposit account, does not prevent its recovery as a trust fund, arguing that every administrator should keep an account of money paid out and received. Nevertheless, it can hardly be denied that if the bank as administrator had deposited the funds of the estate in another bank, in a proper manner, no trust would have arisen in favor of the estate against the bank of deposit upon its insolvency. See annotation in 37 A.L.R., 120. The same rule might well be applied when a banking corporation, as representative, deposits funds held in that capacity in its own banking department, and this latter view has been adopted by other Courts.
"Thus, the New Hampshire Court has held that a trust company, made by its charter a legal depository for trust funds, legally authorized to act as trustee under a will, may deposit in its savings department, which has been duly organized as a separate and distinct department, and is amenable to the State laws governing savings banks, funds held by it as testamentary trustee, and the beneficiary of the trust or the successor trustee will be entitled to no trust or preference in the repayment of the deposit upon the insolvency *Page 32 
of the company; the claim for the fund thus deposited stands like that of other depositors in that department, being entitled only to its pro rata share in the distribution of the assets, and this without considering whether the fund can be identified or traced. Tucker v. New Hampshire TrustCo. (1897), 69 N.H. 187, 44 A., 927; Bank Comrs. v.Security Trust Co. (1900), 70 N.H. 536, 49 A., 113.
"In the Tucker case (N.H.), supra, the Court emphasized that, if the deposit had been made by any other trustee, it would have been a legal deposit, and the trustee would have been fully protected.
"And in Shute v. Hinman (1899), 34 Or., 578, 47 L.R.A., 265, 56 P., 412, 58 P., 882, where an administrator made a general deposit of funds of the estate in a bank owned by himself, and the funds were commingled with the general funds of the bank and used in its business, the Court, in passing upon the right of preference in such funds, held that the fact that the administrator and the banker were one and the same person, so that the bank must have known the character of the funds deposited, afforded no reason for changing the rule that a general deposit cannot be impressed with a trust after the bank in which it has been placed has made a general assignment. But before making this point the Court held that the identity of the general deposit by the administrator was destroyed, if any portion of the money in the bank was afterwards checked out."
The case of Commonwealth of Pennsylvania v. Tradesmen'sTrust Co., hereinbefore referred to, may be found in250 Pa., 378, 95 A., 577, 578, L.R.A., 1916-C, 10. One is especially impressed with the language in that decision: "The trustee here is a trust company authorized by statute to receive and handle funds of others and do a general banking business. In the conduct of this business it necessarily handled trust funds belonging to a large number of persons. These funds in the present case were deposited in a *Page 33 
general account, and in this way it became impossible to say to whom any particular part belonged. The case is distinguishablefrom that of an individual trustee who mixesthe funds of a single cestui que trust with his own account.In such case it can readily be determined whether and towhat extent he has appropriated the trust funds to his ownuse. On the other hand, when a trust company deposits in acommon account funds belonging to various persons, it cannotbe said that the mere fact of there being on deposit atall times sufficient to meet the claim of any particular customerof the bank entitled that customer to claim it asagainst other claimants whose money also went into thesame account. Claimant could not trace title to any particularpart of the deposits, and his claim can therefore rise nohigher than the claim of others whose money was depositedin the same general fund."
This strong and well-stated declaration comports with the applicable rule of equity long the standard and guide in this jurisdiction.
The latest authority we have found bearing upon the questions at issue is the decision by the Supreme Court of North Carolina in the case of State ex rel. Hicks v. CorporationCommission, 201 N.C. 819, 161 S.E., 545. Farmers' Bank Trust Company was duly appointed guardian of certain infants. It gave a guardianship bond as required by the statute; it mingled the funds of its ward with its own funds; it became insolvent. Hicks succeeded it as guardian of the minors. He intervened in the main case, and sought to have the assets of the insolvent bank in the hands of the receiver impressed with a trust and preference in favor of his wards. The Supreme Court said:
"There is no error in the judgment in this action that the relator, W.L. Hicks, guardian [of the minors] recover of the defendants the sum of $3,000.00 * * * and costs.
"There is error, however, in so much of the judgment as orders and adjudges that the relator has a preferred claim on the assets of the Farmers' Bank Trust Company, now *Page 34 
in the hands of the Corporation Commission or its successor, the commissioner of banks of North Carolina, or of the defendant John D. Biggs, liquidating agent. See First Citizens' Nat. Bank v. Corp. Com., 201 N.C. 382,160 S.E., 360; Roebuck v. Surety Co., 200 N.C. 196,156 S.E., 531. Neither the relator nor the sureties on the bond of the Farmers' Bank Trust Company, as guardian, are entitled to preference in the distribution of its assets among the creditors of the insolvent bank."
In the case of Peurifoy, Rec'r, v. Continental FinanceCo., 164 S.C. 261, 162 S.E., 458, 461, the plaintiff, as receiver of the American Bank Trust Company, a closed banking corporation, brought his action to have the Court determine whether the receiver should pay, as preferred claim certain certificates of deposit held by defendant. The right of preference was denied in an able decree by Judge Ramage, which the appellate Court adopted as the opinion of that Court. The following excerpts from it are cited mainly to show that the latest utterance of this Court reiterates the Court's adherence to the established rule of equity in this State touching and controlling the fundamental issue at stake. Says the decree:
"At the moment the bank became insolvent and closed its doors, its assets were impressed with a trust that they be distributed ratably among its creditors, as our Court has frequently said, and there was certainly no notice to creditors and depositors of any reason which would take these certificates of deposit out of the general rule. * * *
"I see no way to distinguish this case from the principles so often announced that equity requires that the assets of an insolvent corporation be distributed ratably, and that one who claims a departure from this rule must establish a right thereto."
Here is an epitome of the history of this important case: J.L. Michie died May, 1928, testate; he appointed the bank to be executor of his will; the bank *Page 35 
qualified June 6, 1928; it closed its doors October 30, 1928. At his death J.L. Michie had on deposit in the bank certain sums of money, already in the general depositors' fund. When the bank qualified as executor, it transferred on the books this account from the name of J.L. Michie to the name of the bank as executor. No other change was made in the status of the affairs of the estate and bank, till after the closing of the bank and the appointment of Mr. Brasington as receiver; whereupon he resigned the executorship of the bank and Donald E. Michie was appointed administrator c. t. a. of the estate. Certain dividends have been paid the administrator. He seeks to have the assets in the hands of the receiver impressed with a trust for the balance of the funds of the estate which went into the hands of the bank, on the ground that the bank as executor received the funds in trust; that by mingling them with the funds of the bank it committed a breach of trust which entitles the estate to be paid in full as a preferred creditor.
For the reasons hereinabove given we hold that the estate is not entitled to the preference claimed.
We have not passed upon the exceptions seriatim. The conclusion we have reached renders this unnecessary. We have, however, considered all the issues necessary to the determination of the cardinal question.
It is the judgment of the Court that the judgment of the Court below be reversed, and the petition dismissed.
MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER concur.