BLAIR v. HILL et al.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. BANKS AND BANKING—COLLECTIONS—TITLE.
    Where a banker receives a check for a collection merely, the fact that he causes it to be deposited in a correspondent bank, to the credit of his bank, does not make the original owner a creditor of the latter bank, but the proceeds of the check are her property.

2. TRUSTS—FOLLOWING TRUST FUNDS—PRESUMPTION.
    Where a trustee commingles trust funds with his own, and deposits the entire amount to his own credit, all withdrawals made by him thereafter will be presumed to have been rightfully made, so that the trust fund will remain continually unimpaired, where there is left a sufficient balance to his credit to make up the requisite amounts.

3. SAME.
    The fact that a trustee, by mingling the funds of his cestui que trust with his own, renders it impossible to trace the identical moneys, does not destroy the character of the trust fund as such, so as to prevent the cestui que trust from following and reclaiming it.

4. BANKS AND BANKING—COLLECTIONS—RECEIPT OF CHECK BY INSOLVENT BANK.
    Where a banker knew that he was hopelessly insolvent when he received for collection a check which he caused to be credited to him in a correspondent bank, his failure to apprise the owner of his condition made the acquisition of the check fraudulent, even if the latter knew he was to use it as a debt.

Appeal from special term, Onondaga county.

Action by Betsey A. Blair against D. Munro Hill, as assignee of the firm of Rodger & Co., and Robert E. Greene, individually, as sole surviving partner of the firm of Rodger & Co. From a judgment for plaintiff, defendant Hill appeals. Affirmed.

On the 16th day of December, 1897, the parties in interest in a partition action met at the office of a justice of the peace in the village of Jordan, in the county of Onondaga, expecting the avails of the sale of real estate involved in said action would be distributed. The attorneys for the plaintiffs in the action, who resided in New York City, were present, with checks drawn on a New York trust company to the order of the respective parties entitled thereto, among whom was the plaintiff, and whose share was $1,591. These checks were indorsed and delivered to W. C. Rodger. He was a prominent business man in Jordan, the principal owner of the private banking company in that village, and was supposed to be responsible, and was guardian ad litem for several infant defendants in said action, and assumed to represent the other parties. These checks, to the amount of $16,876.27, were taken by Mr. Rodger, and he at the same time told the parties to come to his office on the Thursday following to get their money. Rodger turned over the checks to Mr. Greene, his co-partner, and the man in charge of the banking office of Rodger & Co., by whom the checks, pursuant to the direction of Rodger, were at once forwarded for collection to the Chase National Bank, the New York correspondent of said banking company. Credit was given to Rodger & Co. by this New York correspondent on the 20th of December. Shortly after this, at the suggestion of Rodger, the parties were credited at his banking company with the sums for which they were severally entitled, although these entries were not made in the regular bank books for its customers, but in what is termed the "Inactive Ledger." On the Thursday following the plaintiff was ill, but her husband called at the office of Mr. Rodger to receive the money coming to his wife, and also his own share, as he was one of the parties interested. Mr. Rodger requested that the parties defer receiving the money until the Tuesday following, and this request was acceded to. On the day named he drew checks on his banking company to the order of the several owners, caused them to be signed by them, and the plaintiff received her check along with the others. She presented it to the banking office, and Mr. Greene delivered to her a draft on the Chase National Bank. The plaintiff and her husband lived on a farm at considerable distance from Jordan, and were not depositors with the Rodger Banking Company, and the entire business had been transacted without consultation with them, and they were ignorant of the method by which their money was to reach them. The plaintiff took her draft home in the country, and was confined to the house by illness until some time in April. She retained the draft until January 14th, when her husband left it with a bank in Syracuse for collection, but payment was refused by the Chase National Bank on the succeeding day. The other parties interested in the fund had received pay on their drafts some time before. Rodger died insolvent, January 2d, and Mr. Greene, his surviving partner in the banking business, made a general assignment for the benefit of creditors on the 7th of that month, and it developed that Mr. Rodger was a very large borrower of the deposits of the bank, and that the company was also unable to pay its debts. From the time of the credit to the banking company by the Chase National Bank until after the presentation of the draft, January 15th, its balance was sufficiently large in said bank at any time to warrant the payment of this draft. On January 1st the balance was $6,682.57, and drafts and checks of Rodger & Co. were honored by the New York bank down to January 11th, and the sum finally removed by the assignee in February was $3,927.26. Other facts appear in the opinion.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and LAUGHLIN, JJ.

Henry Weston, for appellant.
Ceylon H. Lewis, for respondent.

SPRING, J.  The plaintiff did not realize that Mr. Rodger deposited the check to her credit in the bank.  She assumed he took it for collection, and was to pay her the avails in cash.  The collection through the New York bank, the commingling of the fund with his own, and the subsequent giving of the draft to her were all links in the chain, with the purpose to stem the tide of financial embarrassment setting towards Rodger.  The plaintiff, unacquainted with the business and with Rodger's circumstances, was an unwitting participant in the project.  The transaction did not occur in the banking office, and she had no expectation that his retention of the check was to make her a creditor of his banking company.  Accordingly, the general rule that one who deposits in a bank becomes its creditor has no application to her case.  He was her agent to get the money on this check for her, and the subsequent transactions, terminating in the deposit to the credit of Rodger & Co. in the New York bank, were wholly in excess of his authority.  The doctrine is well settled that, where a bank or an individual receives a check for collection, the proceeds are the property of the owner of the check, and do not pass either to the original collecting agent or to its correspondent bank.  Bank v. Hubbell, 117 N. Y. 385, 22 N. E. 1031, 7 L. R. A. 852; National Park Bank of New York v. Seaboard Bank, 114 N. Y. 28, 20 N. E. 632; O'Conner v. Bank, 124 N. Y. 324, 26 N. E. 816; People v. Merchants' & Mechanics' Bank of Troy, 78 N. Y. 269; and cognate cases relied upon by the appellant's counsel,—hinge upon the fact that in each instance there was a voluntary deposit in the bank, so that the depositor became its creditor in common with the other depositors.  So, in Metropolitan Nat. Bank of New York v. Loyd, 90 N. Y. 530, the check was not left with the bank for collection, but by direction of the depositor credit was given him for the amount on its presentation, and he could demand payment or withdraw the fund at any time.  This necessarily vested the bank with the absolute title to the check, and that ownership passed to its transferee.

Rodger, therefore, had no other duty to perform in regard to the check than to collect it, and turn over the avails to his principal, the plaintiff.  When he intermingled the proceeds with the general account of Rodger & Co., he misappropriated them.  Their character as a trust fund, however, still adhered to them.  The fact they were incapable of specific identification did not debar the plaintiff from following the money.  If the rights of intervening depositors had attached to the fund, a court of equity possessed the power to unravel and adjust those rights.  The significant fact, however, appears without dispute that from the time credit was given to Rodger & Co. by its New York correspondent until the removal of the fund by the assignee, in February, there was more than sufficient money to the credit of Rodger & Co. to honor this draft of the plaintiff.  The banking company treated it as having been paid in their statement, and knowledge of its nonpayment was derived from the New York bank.  After the credit arising from the collection of these checks, whatever withdrawals were made on the drafts and checks of Rodger & Co. presumptively were

rightfully withdrawn, and hence the trust fund remained continuously unimpaired. In re Holmes, 37 App. Div. 15, 55 N. Y. Supp. 708, affirmed on opinion of appellate division, 159 N. Y. 532, 53 N. E. 1126; Bank v. Peters, 123 N. Y. 272, 25 N. E. 319; Central Nat. Bank v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693. A trustee cannot, by mingling the funds of his cestui que trust with his own, thereby rendering it impossible to trace the identical moneys, destroy the fiduciary character of the deposit. It is fundamental that, where there has been a conversion or misappropriation of property, the rightful owner can retake it wherever found. If it is money, and not susceptible of precise identification, because commingled with other moneys, the entire fund will be impressed with the trust. The wrongdoer cannot escape liability because he has made his fraud difficult of detection. The only variation from the rule attaching the whole fund with the trust arises where it is necessary to require identification to guard the rights of others. Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566; Van Alen v. Bank, 52 N. Y. 1. As was said by Chief Judge Church in the case last cited, at page 7:

"When a trustee deposits trust moneys in his own name in a bank with his individual money, the character of the trust money is not lost, but it remains the property of the cestui que trust. If such money can be traced into the bank, and it remains there, the owner can reclaim it."

In Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504, the trustee diverted the fund, but it never came into the custody of the assignee, so he was not charged with its payment. In this case, as has been said, there never was a reduction in the fund below the amount of this draft, so it was impressed with the trust when turned over to the assignee.

As the Chase National Bank has paid over the entire fund to the assignee, it is not interested in this controversy. A different situation might be presented if the bank had paid out the money innocently on checks of Rodger & Co. Hatch v. Bank, 147 N. Y. 184, 41 N. E. 403, and Nassau Bank v. National Bank of Newburgh, 159 N. Y. 456, 54 N. E. 66, and like cases, had that circumstance as a potent factor, and are not, therefore, akin to this case. The solution of these transactions is necessarily colored by the fraudulent conduct of Rodger. Bank v. Peters, 123 N. Y. 272, 25 N. E. 319.

At the time the check was retained by him, both he and his banking company were hopelessly insolvent, and that had been the condition for some time. He was cognizant of the situation, and it was his duty to apprise the plaintiff of it. His failure to do this made his acquisition of the check fraudulent, even if the plaintiff had known he was to use it as a debt. Chemical Co. v. Dunn, 39 App. Div. 130, 57 N. Y. Supp. 100; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537; Grant v. Walsh, 145 N. Y. 502, 40 N. E. 209. Had this been property which could have been reclaimed in specie, that would have been the proper remedy. The check fraudulently acquired had been converted into money, and the only course open was to follow this equivalent, which was the result of the wrongdoing of Rodger.

The judgment should be affirmed, with costs. All concur.