## Erie Trust Company's Case (No. 1).

Argued March 22, 1937. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Elmer L. Evans,* of *Bryan & Evans,* and *Byron A. Baur,* of *Marsh, Spaeder, Himebaugh & Baur,* for appellants.

*John B. Brooks,* with him *Alban W. Curtze, Gerald F. Flood,* Special Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellees.

OPINION BY MR. JUSTICE STERN, April 19, 1937:

In the Estate of W. W. Gingrich, deceased, the Orphans' Court of Erie County filed an adjudication surcharging Erie Trust Company, the executor, in the sum of $29,540, representing trust funds expended by the company for the purchase of its own stock, and in the additional sum of $25,819.80, representing cash taken from the estate by the company as commissions, to which, as the court held, it was not entitled. Erie Trust Company having become insolvent, and the Secretary of Banking having taken possession as receiver, the beneficiaries of the Gingrich Estate sought priority in distribution for the amount of this surcharge. The Court of Common Pleas denied their right to a preference over general creditors. On the present appeal from that decision they have abandoned their claim concerning the $29,540, and it is only their contention in regard to the $25,819.80 item that is presented to this court for consideration.

The first question that arises depends upon the construction to be placed upon section 1011A of the Department of Banking Code of May 15, 1933, P. L. 565, prescribing the order of preference in the distribution of assets of institutions, other than building and loan associations, liquidated by the secretary of banking as receiver. This section provides, first, for receivership expenses, second, for claims of the Commonwealth and "any other claim which is given a preference by law," third, for deposits, and fourth, for "any claim for the amount of any deficiency in the funds, property, or in-

vestments of an estate of which the institution was fiduciary, or any *surcharge* with respect to such estate, which is found to be due by the court in which the account for such estate is filed; and any claim of a creditor of the institution, not listed under any other category in this section." (Italics supplied.)

The receiver contends that the present claim, being on a *surcharge* decreed by the orphans' court, comes expressly within the fourth class. Appellants, on the other hand, maintain that they belong in the second class, because their claim is one "which is given a preference by law."

Where improperly converted assets of a trust estate are traced into the fund for distribution, a preference has always been allowed on the theory that such assets never have become a part of those of the trustee but at all times have remained, whether in their original or substituted form, the property of the cestui que trust, and therefore the trustee's general creditors are not entitled to any share in their distribution. The claim of the trust beneficiary in such a case is not really for a preference, nor to establish an equitable lien, but rather for the reclamation of his own property. Accordingly, even though the Act of May 8, 1907, P. L. 192, and the amending Act of May 23, 1913, P. L. 354, provided that in any distribution in the course of liquidation of a trust company the deposits should be paid out first and thereafter all the remaining liabilities of the trust company, the courts consistently held that claims for trust property must be recognized above all others if the trust res could be identified. It would seem clear, therefore, that the provision of section 40(f) of the Act of June 15, 1923, P. L. 809 (repealed by the Department of Banking Code) that "in any instance where it shall be ascertained . . . that there is a deficiency in any such trust funds . . . or that such corporation or person is liable to surcharge in respect thereof, the amount thereof shall constitute an unpreferred claim against the general

funds in the hands of the secretary . . .," and the provision in section 1011A of the Department of Banking Code placing surcharges on an equality with claims of general creditors and subordinating them to deposits, were not intended to apply to the claim of a cestui que trust for the recovery of trust property which had been converted by the trustee. The real purpose of these provisions was to establish the principle that deficiencies in trust funds, and surcharges in respect thereof, were not, *as such,* to have any higher standing than general claims. An illustration of a claim on an *unpreferred* surcharge would be one based upon an act of negligence or mismanagement on the part of the trustee, as, for example, a failure to dispose of non-legal securities in the trust, or allowing trust funds to remain uninvested for an undue period of time. But in the present case the claim of appellants is to recover, as their own property, either in its original or changed form, cash actually taken from their estate by the trustee, and such a claim, although involving a "deficiency in the funds" of a trust estate and a "surcharge with respect to such estate," is not to be relegated to the fourth class under section 1011 of the Department of Banking Code. Whether it comes within the second class as a "claim which is given a preference by law," or whether it comes ahead of *all* the classes there enumerated, is of no practical moment, and calls for no determination, in these proceedings.

We thus come to the principal question involved,— have appellants been able to trace the converted cash of the estate into the assets in the hands of the receiver for distribution? The court below held that this requirement had not been met. The $25,819.80 taken by Erie Trust Company from the Gingrich Estate was placed in the general cash funds of the company. The lowest amount of actual cash in those funds from the time when the money was taken from the estate until the receiver was appointed was $3,865.40, together with "cash items" of $1,937.63. The lowest amount of the company's de-

posits in other banks was $6,373.23.[1] During this period the company deposited a large amount of cash in another bank, and also invested some general cash funds in various securities (Church of the Covenant bonds and the "Leichner" mortgage). The bonds were in the possession of the company at the time the receiver took possession; the mortgage had been foreclosed and the mortgaged premises purchased by the company. No trust funds of other claimants had been transferred without authority to the company's general cash funds, and no other claim for a preference based upon any such transfer is involved in the present liquidation proceedings. It is the contention of appellants that in tracing the cash taken from the Gingrich Estate and mingled by Erie Trust Company with its own general cash funds the commingled fund is to be considered as being co-extensive with all of the cash on hand, cash items and cash on deposit with other banks, and therefore the balance on hand of all such items is impressed with the trust and subject to recapture as representing appellants' property; moreover, that the securities purchased from any such funds after the conversion of appellants' money, and now before the court for distribution, are likewise so subject as constituting a substituted form of the cash originally converted by the trustee.

The principles underlying the tracing of trust funds have been the subject of so much confusion in the law, and their formulation has had such a checkered history, that it is frequently impossible to reconcile decisions in the same jurisdiction, much less to harmonize those in the courts of different states. Although it may be said in general that the tendency has been toward a gradual liberalization of the requirements of identification of the trust res, the progress in that regard has been far from continuous. While from early times equity al-

---

[1] At the time the receiver was appointed the cash, cash items, and deposits in other banks amounted to $11,801.80.

lowed a cestui que trust to follow the trust property through any change in form or species into which it may have been transmuted, this privilege originally was not extended to the case of money unless the beneficiary could identify the particular bills or coin which had constituted the trust res. But in the famous case of *Knatchbull v. Hallett*, L. R. 13 Ch. Div. 696, Sir GEORGE JESSEL, M. R., in an opinion constituting a landmark in the development of the subject, established the principle that not only could a cestui que trust trace a cash asset of the trust into a fund in which it had become commingled with moneys of the trustee, but that, where the latter made withdrawals from the mixed account, the presumption was that the money thus withdrawn was his own, and the cestui que trust could claim that the balance represented the trust property. There evolved the generally accepted doctrine that the beneficiary was entitled to the lowest balance to which the commingled fund at any time became depleted, such minimal residue being considered sufficiently identified as constituting the trust fund. The variance in later decisions arose from differences in viewpoint as to the boundaries properly to be ascribed to the "commingled fund." If a defaulting trustee mingled trust assets with his own, did the mixed fund embrace his general assets, or consist only of the specific assets with which the trust res had been mingled? More particularly, in the case of a bank which had improperly transferred to its own funds cash from an estate of which it was trustee, could the cestui que trust reclaim his property from the general assets of the bank, or only from its general cash funds, or, adopting a still more rigid requirement, only from the exact cash fund or particular bank deposit in which the cash of the estate was placed or deposited? There are some jurisdictions which hold that the trust property, even without any special identification, and even though the beneficiary cannot show that it came in some form or other into the hands of the receiver, can be reclaimed

out of the general assets of the bank, the theory being that those assets were augmented and the bank unjustly enriched by its appropriation of the trust property, and its general creditors should have no right to profit thereby. This doctrine, however, has been discarded in several of the states which originally adopted it, and the view which presently prevails in most jurisdictions is that the cestui que trust must identify the trust res by tracing it into some *specific* funds or assets of the bank, the problem remaining to determine *how* specifically the commingled fund must be differentiated from the general assets.

In Pennsylvania the decisions have not been wholly consistent. Originally, as in England, it was held that where the converted property consisted of money which was mixed with funds of the trustee no identification was possible: *Thompson's Appeal,* 22 Pa. 16. At an early period, however, the idea that money could not be "earmarked" was abandoned, and it was held that it was the identity of the fund, not of the exact coins composing it, that measured the rights of the beneficiary: *Farmers' & Mechanics' National Bank v. King,* 57 Pa. 202. In *Lebanon Trust & Safe Deposit Bank's Assigned Estate,* 166 Pa. 622, it was ruled that the trust money that went into the general cash on hand of the bank trustee and then into the general funds of the bank could not be reclaimed, but that, in order to trace the money it was necessary to follow it into some specific property or securities. A trend toward the conservative viewpoint culminated in the cases of *Commonwealth v. Tradesmen's Trust Co.,* 250 Pa. 372, 378, 383, which apparently harked back to the decision in *Thompson's Appeal,* and not only held that where money received from the sale of trust securities was deposited by the trustee company in its general funds there could be no identification sufficient to establish a basis of priority, but stated that where "money is mixed with a . . . fund of the same description . . . the right to pursue it

fails," and this even though the money in the general account of the trustee had never been depleted below the sum belonging to the trust estate. These cases also held that there was a legal difference in the situation where the trustee was a trust company and where the trustee was an individual. This suggested distinction, although repeated in some of the later authorities, would seem logically and practically unjustified, and it has been, at least tacitly, abandoned. Subsequently, the broader viewpoint was reëstablished, and the principle of *Knatchbull v. Hallett* accepted, that "where a trustee has mingled trust funds with his own, and afterward takes sums from the common mass for his own use, it will be presumed, so long as the mass is as large as the original trust funds, that the sum so taken was his own and not the trust funds": *Vosburgh's Estate,* 279 Pa. 329. In *Cameron v. Carnegie Trust Co.,* 292 Pa. 114, the opinion contained expressions to the effect that the cestui que trust need only show that the general assets of the trustee were augmented by the misappropriated trust funds, but this case was explained, and the generality of its statements restricted, in *Mehler's Appeal,* 310 Pa. 25, where it was again ruled that the beneficiary of the trust must identify the proceeds of the converted assets as contained in some specific fund or property in the possession of the company at the time it is taken over by the receiver, and the trust attaches only to the lowest balance in the fund at any time during the period between the placing of such proceeds therein and the closing of the company.[2]

It may be stated, then, to be the law in Pennsylvania, that it is not sufficient for a cestui que trust merely to show that the general assets of the trustee have been increased by an unauthorized appropriation of trust prop-

---

[2] See also *Royersford Trust Company Case,* 317 Pa. 490; *Bangor Trust Company Account,* 317 Pa. 495, and *Lansdowne Bank and Trust Company's Case,* 323 Pa. 380.

erty, but he must also identify the trust res by tracing it into some specific property, funds or assets. We have no hesitation in holding in the present case that the deposits of the trustee company in other banks are to be considered, together with the cash on hand and the cash items, as constituting a single fund, sufficiently differentiated from the company's general assets to meet the requirements of the law in regard to the tracing of trust property. We are led to this conclusion by the fact that banks and individuals alike generally regard cash on hand and deposits in banks as a unit of cash resources distinct from assets consisting of securities and other forms of personal property. To insist upon a separate tracing of cash funds and credit balances in banks would be to dissociate legal principles from practicalities. The intricacies of bookkeeping and accounting systems, the complexities of banking usage, the difficulty of identifying cash through a series of transactions, the frequency with which balances are shifted from one bank to another and indiscriminate withdrawals made therefrom, are such that ordinarily it would be virtually impossible to distinguish between cash, cash items, and deposits in other banks. Indeed, as a legal proposition, there is as little reason to attempt such a differentiation as there would be to establish one between moneys kept in different vaults of the same bank, compartments of a cash register, or pockets of a purse. Therefore, even though appellants have not in this case traced the money from their estate into any particular fund or bank deposit, they are, in our opinion, entitled to the lowest level of the cash and cash items, and funds of Erie Trust Company on deposit in other banks, reached between the time when the conversion occurred and when the secretary of banking took possession of the assets of the company.[3]

[3] While there are many authorities to the contrary, the following cases may be cited as being in general accord with the ruling in the present case: *Reichert v. United Savings Bank*, 255 Mich. 685, 239 N. W. 393; *Yellowstone County v. First Trust & Savings*

It follows as a necessary corollary from this ruling that investments made by the trust company, after the time of the conversion, from funds on deposit in other banks, are also subject to the claim of appellants in this proceeding. If the deposits themselves are to be considered part of the fund into which the trust res has been sufficiently traced, any securities into which such deposits were transmuted must be regarded as merely substituted forms of the trust property. As early as *In re Oatway*, 2 Ch. 356 (1903), it was held that where a trustee commingled trust moneys with his own, from the mixed account purchased an investment in his own name, and subsequently dissipated the balance of the fund, the beneficiary could impress the trust upon such investment. The fictional presumption that the money withdrawn from a commingled fund is the trustee's own should not be applied to defeat the cestui que trust's rights where the balance left is insufficient to meet the trust obligation. The most satisfactory rule would seem to be that formulated in Restatement of Law of Trusts, section 202(1) i, as follows: "Where the trustee wrong-

---

*Bank,* 46 Mont. 439, 128 Pac. 596; *People v. Auburn State Bank,* 215 Ill. App. 133; *People v. Iuka State Bank,* 229 Ill. App. 4; *Myers v. Federal Reserve Bank,* 101 Fla. 407, 134 So. 600; *City Bank v. Hart,* 102 Fla. 529, 136 So. 446; *State v. Bank of Commerce,* 61 Neb. 181, 85 N. W. 43; *Lane v. First National Bank,* 131 Ore. 350, 281 Pac. 172; *School District v. Schramm,* 142 Ore. 296, 20 Pac. (2d) 241; *Tooele County Board of Education v. Hadlock,* 79 Utah 478, 11 Pac. (2d) 320; *Blythe v. Kujawa,* 175 Minn. 88, 220 N. W. 168; *Bank of Danville v. Commercial Bank & Trust Co.,* 163 Va. 162, 175 S. E. 775; *Federal Reserve Bank v. Quigley,* 284 S. W. 164 (Mo. App.); *State ex rel. Robertson v. First State Bank of Ripley,* 19 Tenn. App. 556, 91 S. W. (2d) 1039; *ex Parte Michie,* 167 S. C. 1, 165 S. E. 359; *Schumacher v. Harriett,* 52 Fed. (2d) 817. Some of these cases lose their significance as authority for the exact point here involved by reason of the fact that they represent jurisdictions which hold to the "augmentation of assets" or "unjust enrichment" theory and require for identification of the trust res merely a tracing into the general assets and not into any specific funds of the trustee.

fully mingles trust funds with his individual funds in one indistinguishable mass, and subsequently makes withdrawals from the mingled fund, the beneficiary is entitled to a proportionate share both in the part which remains and in the part which is withdrawn, or, at his option, he is entitled to an equitable lien upon both parts to secure his claim for reimbursement." The application of this rule to the present case entitles appellants, in addition to their rights in the general cash funds already stated, to pursue the balance of their claim of $25,819.80 into the Church of the Covenant bonds and the "Leichner" mortgage (subsequently foreclosed and now held in the form of real estate) purchased by Erie Trust Company out of its general cash funds after the conversion by it of the trust money.

The decree of the court below is reversed and the record remitted with directions to enter a decree in accordance with this opinion; costs to be paid out of the general assets of Erie Trust Company in the hands of the receiver.