■ In the Matter of FRONTIER INSURANCE COMPANY. COMMERCIAL RISK RE-INSURANCE CO., Appellant-Respondent, v SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, as Rehabilitator of FRONTIER INSURANCE COMPANY, Respondent-Appellant. [769 NYS2d 530]—

Order, Supreme Court, New York County (Edward Lehner, J.), entered October 21, 2002, which granted the motion of Commercial Risk Re-Insurance Co. insofar as to permit it to bring an action against the Superintendent of Insurance of the State of New York as rehabilitator of Frontier Insurance Company, and to direct the Superintendent of Insurance to segregate $1,744,209.26 in a separate account, but denied the motion insofar as it sought the immediate return of those funds, unanimously modified, on the law and the facts, to direct the Superintendent to pay Commercial Risk $1,201,534.87 forthwith and to provide that the remaining amount claimed by Commercial Risk need not be segregated in a separate account, and otherwise affirmed, without costs.

By consenting to an evidentiary hearing and discovery, the Superintendent waived his argument that the IAS court should not have permitted Commercial Risk to bring a separate action. In any event, under the facts of this case, the IAS court properly exercised its discretion in modifying its October 15, 2001 order to permit Commercial Risk to sue the Superintendent (see Matter of Bean v Stoddard, 238 NY 618 [1924]).

Of the $1,744,209.26 that Frontier withdrew from the trust account established by Commercial Risk, all but $68,000 was admittedly taken wrongfully, i.e., converted (see Payne v White, 101 AD2d 975, 976 [1984]) and the wrongfully taken funds, amounting to $1,676,209.26, never became the property of Frontier (see Pearlman v Reliance Ins. Co., 371 US 132, 135-136 [1962]; In re Mishkin, 138 BR 410, 412-413 [1992]; In re Iorizzo, 114 BR 19, 24 [1990]), but rather became subject to a constructive trust in Commercial Risk's favor. Commercial Risk's entitlement to the immediate return of the converted funds from the Superintendent as Frontier's rehabilitator, however, depends upon the extent to which the converted sums remain in the Superintendent's possession (see Iorizzo, supra; Matter of Cavin v Gleason, 105 NY 256 [1887]). Of the $1,744,209.26 that Frontier deposited into its checking account on August 17, 2001, $542,674.39 was paid to third parties, while $1,201,534.87 was

traced into Frontier's money market account. Frontier's money market account did not subsequently dip below $1,201,534.87; indeed, as of May 31, 2002, that account contained more than $11 million. Because Frontier's money market account did not dip below $1,201,534.87, the trust fund in that amount remained undiminished (*see Blair v Hill*, 50 App Div 33, 36-37 [1900], *affd* 165 NY 672 [1901]). Although money flowed out of Frontier's money market account after the $1,201,534.87 was transferred into it, it is presumed that Frontier's money was used first and that Commercial Risk's money remained in the account (*see Matter of Accles*, 153 Misc 421, 423 [1934], *affd* 245 App Div 743 [1935]). Accordingly, the Commercial Risk funds held by the Superintendent, in the amount of $1,201,534.87, should be turned over to Commercial Risk forthwith.

As to the remaining $542,674.39, which was dissipated, Commercial Risk's entitlement is merely that of a common creditor (*see Matter of Reece*, 122 Misc 2d 517, 518 [1983]). Accordingly, there exists no basis to require the Superintendent to segregate funds in that amount.

We have considered the parties' remaining arguments for affirmative relief and find them unavailing. Concur—Nardelli, J.P., Saxe, Friedman, Marlow and Gonzalez, JJ.