TENCO EXCAVATING, INC., Plaintiff

v.

FIRST SEALORD SURETY, INC.
(In Liquidation), Defendant

(Ancillary matter to In Re: First Sea-
lord Surety, Inc., In Liquidation
No. 1 FSS 2012).

Commonwealth Court of Pennsylvania.

Argued May 14, 2013.

Decided Aug. 27, 2013.

Douglas Y. Christian, Philadelphia, for plaintiff.

Steven B. Davis, Jeffrey D. Grossman and Karl S. Myers, Philadelphia, for defendants.

BEFORE: LEADBETTER, Judge, BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEADBETTER.

In this adversary proceeding ancillary to the liquidation of First Sealord Surety, Inc. (First Sealord or FSS), Tenco Excavating, Inc. (Tenco), as a limited intervenor, has filed a Complaint against the Liquidator of First Sealord. Tenco alleges that cash in First Sealord's operating accounts at the time of liquidation included cash deposited by Tenco to indemnify First Sealord in the event of losses on Tenco's performance bonds, and subsequently was improperly diverted. Tenco maintains that the cash is "collateral," which is not part of the liquidation estate. Based on this premise, Tenco seeks a declaration that it is entitled to the return of the collateral or any portion of it that remains in the Liquidator's possession. In addition, Tenco seeks a declaration that it is the beneficiary of a constructive trust in any additional money that may be recovered by the Liquidator in his pending action against First Sealord's former directors and officers, an action in which the Liquidator, among other things, seeks damages for the misappropriation and conversion of cash collateral deposited by various bond principals. The Liquidator has preliminarily objected to each of the two counts of the Complaint.[1] The preliminary

---

1. In considering the Liquidator's preliminary objections, we accept as true all the well pled averments of the complaint as well as the reasonable inferences arising therefrom. *See* Pa. R.A.P. 1516(b). *See also Pa. State Lodge,* *Fraternal Order of Police v. Dep't of Conservation & Natural Res.,* 909 A.2d 413, 415–16 (Pa.Cmwlth.2006), *aff'd,* 592 Pa. 304, 924 A.2d 1203 (2007). We will sustain a demurrer only when, on the face of the complaint,

objections to the first count are overruled and the objection to the second count is sustained.

■ Tenco is an excavating company principally located in Illinois. In April of 2009, First Sealord agreed, in a "General Indemnity Agreement," to act as Tenco's surety on performance bonds and Tenco agreed to provide, upon demand, collateral security for First Sealord's risk of indebtedness on the bonds. Tenco promptly deposited to First Sealord's account two checks, each in the amount of $250,000 and later, in August of 2010, wired an additional $500,000 to First Sealord's account. Under the terms of the parties' "Collateral Agreement," First Sealord agreed that it would use the collateral only in the event of a loss on the bonds that Tenco failed to indemnify and that it would return the collateral upon evidence of no further risk on the bonds. In March 2011, Tenco changed sureties and First Sealord did not execute any bonds for Tenco thereafter. All of Tenco's projects secured by a bond executed by First Sealord have been completed without any loss. First Sealord entered liquidation on February 8, 2012, and, in July, Tenco demanded return of its $1 million cash collateral. The Liquidator refused the demand, explaining that prior to liquidation the collateral from Tenco, as well as similarly deposited collateral from others, had been improperly diverted into operating accounts and substantially spent.[2]

Tenco avers that as of February 6, 2012, just prior to liquidation, First Sealord's operating accounts and other accounts held assets exceeding the amount deposited by Tenco. In addition, Tenco points to the Liquidator's pending action against First Sealord's directors and officers seeking damages in excess of $3.5 million. Tenco's complaint maintains that it is entitled to recover its collateral from any funds held by First Sealord (Count I) and that it has a constructive trust in any proceeds from the Liquidator's action against persons culpable in the improper diversion of the collateral funds (Count II).

In its preliminary objections, the Liquidator challenges Count I on three grounds: (1) failure to exhaust an administrative remedy, contending that the only avenue available to Tenco is the statutory proof of claim process that will eventually permit Tenco to share in the distribution to general creditors from the assets of the estate; (2) a demurrer, asserting that the funds Tenco seeks to have returned are general assets of the liquidation estate; and (3) a demurrer, asserting that the funds deposited by Tenco do not qualify under the statutory definition of "collateral" as non-estate assets subject to direct return to Tenco under Article V of the Insurance Department Act of 1921 (the Act).[3] Finally, in a preliminary objection demurring to Count II, the Liquidator asserts that, even if Tenco's collateral is considered to be a non-estate asset, the funds have been commingled, diverted and dissipated, leaving Tenco unable to identify or trace the funds, as is necessary to the imposition of a constructive trust in any fruits of the

---

the law will not permit recovery and any doubt will be resolved in favor of the non-moving party. See id.

2. In his separate adversarial proceeding against First Sealord's corporate officers and general counsel, the Liquidator has averred that cash collateral totaling $3,545,954.95 deposited by 12 different bonded contractors was wrongfully transferred from segregated accounts into general operating accounts and subsequently diverted partly to Broadlands, a wholly owned subsidiary of Sealord Holdings, Inc. See Consedine v. Brier, No. 11 FSS 2012, Amended Complaint.

3. Act of May 17, 1921, P.L. 789, Article V added by the Act of December 14, 1977, P.L. 280, 40 P.S. §§ 221.1–221.63, as amended.

cause of action by First Sealord against the directors and officers.

As the Liquidator correctly points out, Sections 537–543 of the Act, 40 P.S. §§ 221.37–221.43, establish a process by which a creditor of the liquidation estate must pursue his or her claim. "Creditor" is defined as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, secured or unsecured, absolute, fixed or contingent." Section 503, 40 P.S. § 221.3. The statutory claim process establishes the value and priority of the claim for purpose of eventual distribution of assets "from the insurer's estate." *See* Section 544, 40 P.S. § 221.44. Whether Tenco is limited to filing a statutory proof of claim depends upon whether Tenco seeks money from the insurer's estate or the return of money that belongs to Tenco. The Act defines "general assets" very broadly[4] and carves out an exclusion for a certain type of "collateral" that is held by an insurer to secure the obligations of a policyholder under a deductible agreement or under a deductible reimbursement policy.[5]  However, it is not necessary to determine whether Tenco's collateral qualifies for this statutory exclusion from general assets. The Liquidator admittedly treated unused collateral deposits from bond principals as money belonging to the bond principals and not to First Sealord. In his report on the status of the liquidation as of December 31, 2012, the Liquidator states that he has "released some of the cash collateral to the principals, where there were funds remaining in the accounts as of the date of the liquidation." *In re: First Sealord Surety, Inc. in Liquidation,* No. 1 FSS 2012 (Report filed April 8, 2013, at 8). The Liquidator was obligated, under the Collateral Agreement, to treat unused collateral deposited by Tenco as property belonging to Tenco rather than First Sealord. Pursuant to the Collateral Agreement, after it was deposited Tenco's collateral was held by First Sealord to secure Tenco's obligation of reimbursement as principal debtor on the bonds and First Sealord promised the return of unused collateral following fulfillment of all the terms and conditions of the bonds and resultant discharge of any

---

4. Section 503 of the Act defines "general assets" of the estate as:

> [a]ll property, real, personal, or otherwise, not specifically mortgaged, pledged, deposited, or otherwise encumbered for the security or benefit of specified persons or classes of persons. As to specifically encumbered property, "general assets" includes all such property or its proceeds in excess of the amount necessary to discharge the sum or sums secured thereby. Assets held in trust and on deposit for the security or benefit of all policyholders and creditors shall be treated as general assets.

40 P.S. § 221.3.

5. Section 523.1 of the Act states that "[c]ollateral shall not be considered an asset of the estate and shall be maintained and administered by the receiver as provided in this section, notwithstanding any other provision of law or contract to the contrary." 40 P.S. § 221.23a(a). "Collateral" is defined as:

> collateral held by, for the benefit of or assigned to the insurer or subsequently to the receiver in order to secure the obligations of a policyholder under a deductible agreement and also any collateral recovered or held by the receiver that secured the obligations of a policyholder under a deductible reimbursement policy.

Section 523.1 was added by the Act of June 28, 2004, P.L. 443, 40 P.S. § 221.23a(n) (emphasis added). A "deductible agreement" "include[s] any combination of one or more policies, endorsements, contracts or security agreements which provide for the *policyholder* to bear the risk of loss within a specified amount per each claim or occurrence covered under a *policy of insurance....*" 40 P.S. § 221.23 a(n) (emphasis added). "Once all claims covered by the collateral have been paid and the receiver is satisfied that no new claims can be presented, the receiver will release any remaining collateral to the policyholder." 40 P.S. § 221.23a(i)(3).

liability on the part of First Sealord. *See* Collateral Agreement attached as Exhibit B to Tenco's Memorandum of Law in Support of Intervention. Under these terms, the collateral did not become an asset of First Sealord; it was Tenco's money held by First Sealord in trust pursuant to a conditional promise to return it. *See Williams Twp. Bd. of Supervisors v. Williams Twp. Emergency Co., Inc.,* 986 A.2d 914, 922 (Pa.Cmwlth.2009) ("When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest[,] equity converts him into a trustee"). Inasmuch as First Sealord has no further liability on the bonds, Tenco is entitled to the direct return of its funds pursuant to the Collateral Agreement and is not limited to seeking those funds via the statutory claims process.

■ That Tenco's collateral, along with that of some other similarly situated bond principals, was diverted and commingled with operating funds does not deprive Tenco of its claim for the return of its money. *See Central Nat'l Bank v. Connecticut Mut. Life Ins. Co.,* 104 U.S. 54, 66, 26 L.Ed. 693 (1881) (Money belonging to a third person and held by a depositor in a fiduciary capacity is not changed in its character as belonging to the third person by being placed to the depositor's credit in his bank account). We do not understand the statutory definition of "general assets" or anything else in Article V of the Act to operate in a manner that would deprive Tenco of its money based on its wrongful diversion into First Sealord accounts containing general assets of the company. Such a conclusion flies in the face of equitable principles and longstanding law regarding improperly converted trust assets. In Pennsylvania:

> Where improperly converted assets of a trust estate are traced into [a bankrupt-cy] fund for distribution, a preference has always been allowed on the theory that such assets never became a part of those of the [bankruptcy] trustee but at all times have remained, whether in their original or substituted form, the property of the *cestui que* trust, and therefore the [bankruptcy] trustee's general creditors are not entitled to any share in their distribution. The claim of the trust beneficiary in such a case is not really for a preference, or to establish an equitable lien, but rather for the reclamation of his own property.... **[C]laims for trust property must be recognized above all others if the trust res could be identified.**

*In re Erie Trust Co. of Erie,* 326 Pa. 198, 201, 191 A. 613, 614 (1937) (emphasis added) (where beneficiaries of a trust account from which money had been diverted and commingled were entitled to the lowest level of cash from the trust account on deposit in other banks, reached between the time the conversion occurred and when the secretary of banking took possession of the assets of trustee bank).

■ However, Tenco is entitled to recover only its money; it is not entitled to deplete general assets of the estate to satisfy its claim. Tenco must identify funds belonging to it by tracing the diverted collateral. *See Appeal of Mehler,* 310 Pa. 25, 29, 164 A. 619, 620 (1932) (claimant "must trace the proceeds received from the conversion and identify them as contained in some specific fund or property in the possession of the [bankrupt] company at the time it was taken over by the [bankruptcy trustee]"). "In attempting to trace funds, the rule in Pennsylvania is "first in, first out."" *Commonwealth Land Title Ins. Co. v. Doe,* 395 Pa.Super. 595, 577 A.2d 1358, 1360 (1990); *Fischbach & Moore, Inc. v. Philadelphia Nat'l Bank,* 134 Pa.Super. 84, 3 A.2d 1011, 1014–15

(1939). The "first in, first out" accounting approach has been modified slightly by two presumptions derived from English common law and accepted in Pennsylvania and in federal common law. *See Erie Trust,* 326 Pa. at 206, 191 A. at 616. *See also Central Nat. Bank,* 104 U.S. at 68. First, if the fiduciary has a choice of withdrawing from a commingled account either converted funds or legitimate funds, it will be presumed that he withdrew legitimate funds. *See In re Mushroom Transp. Co.,* 227 B.R. 244, 255 (Bankr.E.D.Pa.1998). Second, once the proceeds of the converted funds are spent, new deposits made are not treated as replenishing the trust proceeds. *Id.* Taken together, these two tracing presumptions are sometimes referred to as the "lowest intermediate balance" rule. *Id.* Under the rule, there are three possible scenarios: (1) if the amount on deposit in a commingled fund has at all times equaled or exceeded the amount of the trust, the monies entrusted must be returned in their full amount; (2) if the commingled fund has been depleted entirely, the entrusted funds are considered lost; and (3) if the commingled fund has been reduced below the amount of the trust but has not been depleted, the lowest intermediate balance in the account must be returned to the testator. *See Ins. Comm'r of West Virginia v. Blue Cross,* 219 W.Va. 541, 638 S.E.2d 144, 158 (2006); *Commercial Risk Re–Ins. Co. v. Superintendent of Ins. of the State of New York,* 2 A.D.3d 264, 769 N.Y.S.2d 530 (2003).[6]

Based on these tracing principles, Tenco is entitled to the return of collateral funds or any portion thereof that remained in First Sealord accounts at the time the Liquidator took possession of First Sealord's assets. If however, as the Liquidator asserts, no amount of Tenco's collateral remains in the possession of the Liquidator, Tenco cannot ultimately prevail in this action. On preliminary objections, it is premature to reach the latter conclusion. Therefore, the objections to Count I are overruled.

In Count II, Tenco asserts that it equitably owns and holds title to the Liquidator's claims against First Sealord's directors and officers insofar as those claims are based on averments of improper diversion of collateral and thus, any amounts collected as a result of those claims must

---

6. In *Commercial Risk,* the New York court applied the same accounting principles and presumptions as are applicable in Pennsylvania and explained the analysis as follows:

Of the $1,744,209.26 that Frontier withdrew from the trust account established by Commercial Risk, all but $68,000 was admittedly taken wrongfully, i.e., converted and the wrongfully taken funds, amounting to $1,676,209.26, never became the property of Frontier, but rather became subject to a constructive trust in Commercial Risk's favor. Commercial Risk's entitlement to the immediate return of the converted funds from the Superintendent as Frontier's Rehabilitator, however, depends upon the extent to which converted sums remain in the Superintendent's possession. Of the $1,744,209.26 that Frontier deposited into its checking account on August 17, 2001, $542,674.39 was paid to third parties, while $1,201,534.87 was traced into Frontier's money market account. Frontier's money market account did not dip below $1,201,534.87; indeed, as of May 31, 2002, that account contained more than $11 million. Because Frontier's money market account did not dip below $1,201,534.87, the trust fund in that amount remained undiminished. Although money flowed out of Frontier's money market account after $1,201,534.87 was transferred into it, it is presumed that Frontier's money was used first and that Commercial Risk's money remained in the account. Accordingly, the Commercial Risk funds held by the Superintendent, in the amount of $1,201,534.87, should be turned over to Commercial forthwith.
*Commercial Risk Re–Ins. Co. v. Superintendent of Ins. of the State of New York,* 2 A.D.3d 264, 769 N.Y.S.2d 530, 532 (2003).

be earmarked for Tenco through the imposition of a constructive trust. A constructive trust arises where a person holds title to a property subject to an equitable duty to convey it to another on the ground that he or she would be unjustly enriched if permitted to retain it. *Williams Twp.*, 986 A.2d at 922. Here, Tenco maintains that the Liquidator has an equitable duty to return collateral by turning over damages that may be recovered from the directors and officers for a breach of their fiduciary duty to First Sealord resulting from the diversion of collateral prior to liquidation. In this contention, Tenco casts its net too broadly. The Liquidator/First Sealord estate would not be unjustly enriched were it to receive damages for a breach of duty that harmed First Sealord. While Tenco may be entitled to a return of its funds that are identified via the tracing principles set forth above, it is not entitled to recover its funds from any source in the hands of the Liquidator. Money damages that may be recovered by the Liquidator for a breach of fiduciary duty to First Sealord would constitute new deposits that could not be treated under the lowest intermediate balance rule as replenishing funds belonging to Tenco. This analysis accepts arguendo that the diversion of collateral by the directors and officers is actionable as a breach of duty to First Sealord rather than to Tenco and the other affected collateral depositors. It may well be that Tenco can intervene in that action, alleging that the converted funds belong to it, not First Sealord, or that it could assert its own claim against those who converted its collateral. However, no constructive trust can be asserted over damages that may be recovered by the Liquidator should he establish that the directors and officers owe the converted funds to First Sealord.

Accordingly, the preliminary objection to Count II is sustained.

### *ORDER*

AND NOW, this 27th day of August, 2013, the Defendant's Preliminary Objections are hereby Overruled in part and Sustained in part. The preliminary objections to Count I for failure to exhaust an administrative remedy and in the nature of demurrers are overruled. The preliminary objection to Count II in the nature of a demurrer is sustained and Count II is dismissed with prejudice. The Defendant shall file an answer within thirty (30) days.