**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1996
_____

ALLIED WORLD INSURANCE COMPANY; ALLIED WORLD SPECIALTY
INSURANCE COMPANY; ALLIED WORLD NATIONAL ASSURANCE
COMPANY; UNITED STATES FIRE INSURANCE COMPANY,
Appellants

v.

JAMES KEATING; JONATHAN COHEN; JONATHAN P. COHEN, P.A.; SIAN
KEATING
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-21-cv-04010)
U.S. District Judge:  Honorable Timothy J. Savage
_____

Argued January 23, 2023
_____

Before: SHWARTZ, BIBAS, and FUENTES, Circuit Judges.

(Filed:  February 2, 2023)

Jane M. Byrne, Esq.
Timothy C. Cramton, Esq.
Guyon H. Knight, Esq. [ARGUED]
McDermott Will & Emery
One Vanderbilt Avenue
New York, NY 10017

Robert V. Dell'Osa, Esq.

Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103

       Counsel for Appellant

Patrick T. Henigan, Sr., Esq. [ARGUED]
Eckell Sparks Levy Auerbach Monte
300 West State Street
Suite 300
Media, PA 19063

       Counsel for Appellee

_____

OPINION*

_____

SHWARTZ, <u>Circuit Judge</u>.

Allied World Insurance Company and its affiliates sued Sian Keating for conversion and unjust enrichment. Because Allied's complaint stated claims against Sian for conversion and unjust enrichment, we will vacate the order dismissing them but will affirm the order denying Allied's motion to compel discovery while the motion to dismiss was pending.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

I

A[1]

According to the operative complaint, Allied, an insurance provider, hired Sian's husband, James Keating, to handle surety bond claims.[2]  Over the course of his employment with Allied, James, along with Jonathan Cohen, defrauded Allied.  To hide the money obtained from their fraud schemes, James formed SR5, a company with no offices, operating agreement, bylaws, legitimate business expenses, or employees, other than his two minor children.  James opened SR5's bank account two months after he began working at Allied.

James engaged in four fraud schemes that led to the deposit of funds into the SR5 account.  First, from January 2014 to January 2020, James breached his fiduciary duty and duty of loyalty to Allied by working as a third-party administrator for a competitor insurance company, which resulted in deposits into the SR5 account totaling $285,387.67.

Second, for a five-year period beginning in January 2015, James and Cohen engaged in a kickback scheme in which James hired Cohen's law firm to perform work for Allied, and Cohen's law firm paid at least $331,086.02 into the SR5 account.  The law

---

[1] Because we are reviewing an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept the factual allegations in the complaint as true.  Flora v. Cnty. of Luzerne, 776 F.3d 169, 171 n.1 (3d Cir. 2015).

[2] To distinguish between James Keating and Sian Keating, we refer to them by their first names.

3

firm recouped the kickbacks paid to James by overcharging Allied for work performed.

Third, in November 2016, James and Cohen jointly formed Kodiak Asset Recovery LLC, which James then hired to perform asset searches for Allied. Kodiak charged Allied at least double the rate of Allied's existing asset search firm. Over the course of nearly four years, Allied paid at least $339,950.39 to Kodiak and Kodiak distributed at least $124,549.22 to James via the SR5 account.

Finally, beginning in late 2017 or early 2018, James created another company, American Construction. James falsified contracts and invoices purporting to reflect work American Construction performed for Allied for which Allied then paid American Construction at least $1,000,750. American Construction then transferred all payments it received from Allied to James through the SR5 account.

James and Sian allegedly used funds from the SR5 account for personal expenses such as a kitchen remodel, golf club memberships, electronics, their children's college funds, and cash withdrawals. SR5 also paid James and Sian's two minor children a "salary" in 2018 and 2019, which totaled $18,880. Compl. ¶ 87. In addition, Sian personally accepted at least $10,350 in checks from the SR5 account, including two checks for $2,000 each that were purportedly for "work" performed, id. at ¶ 88, which, Allied asserts, confirm that Sian "was aware" that James used SR5 "for illicit purposes." Id. at ¶ 89. Sian also used the SR5 account to pay a credit card bill and claimed SR5's profits as personal income on her tax returns.

B

4

Relevant here, Allied sued Sian for conversion and unjust enrichment. Sian moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). While this motion was pending, Allied served discovery requests on Sian. Sian failed to respond, and Allied filed a motion to compel.

The District Court denied Allied's motion to compel and thereafter granted Sian's motion to dismiss, finding that it had subject matter jurisdiction, but that Allied failed to state a claim for conversion or unjust enrichment. Allied World Ins. Co. v. Keating, No. 21-cv-04010, 2022 WL 742442, at *1 (E.D. Pa. Mar. 11, 2022). The Court concluded that the conversion claim failed because Allied's funds were commingled with funds from other sources in the SR5 account, such that the funds Sian received were not traceable to Allied. Id. at *3. The Court also dismissed the unjust enrichment claim, finding (1) due to the commingling of funds, Allied could not establish that it conferred a benefit on Sian; (2) even if Sian received a benefit from Allied, she was at most a "passive recipient," such that it would not be unconscionable for her to retain this benefit, and (3) because Allied asserted an unjust enrichment claim against James and Cohen as well, any recovery against Sian would constitute a double recovery for Allied. Id. at *4.

Allied appeals.[3]

---

[3] Allied dismissed its claims against James, Cohen, and Cohen's firm.

II[4]

A

We first address the conversion claim. Conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." Hranec Sheet Metal, Inc. v. Metalico Pittsburgh Inc., 107 A.3d 114, 119 (Pa. Super. Ct. 2014) (citation omitted). "Identifiable funds are deemed a chattel for purposes of conversion." Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp., 855 A.2d 818, 827 n.21 (Pa. 2004). A claim of conversion "does not rest on proof of specific intent to commit a wrong," and therefore "a good faith purchaser of goods from a converter is also a converter and must answer in damages to the true owner." Hranec Sheet Metal, Inc., 107 A.3d at 119 (citation omitted).

The District Court dismissed Allied's conversion claim against Sian because "Allied has not and cannot allege that the money Sian received from the SR5 account

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting a motion to dismiss for failure to state a claim, Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011), and must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation and quotation marks omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The parties agree that Pennsylvania law governs the claims against Sian.

belonged to Allied." Keating, 2022 WL 742442, at *3.[5] The Court reached this conclusion based upon the incorrect assumption that the funds Sian received were commingled with lawfully obtained funds. Accepting, as we must, the facts alleged in the complaint as true, the only sources of funds in the SR5 account were: (1) payments from Allied's competitor; (2) payments from Cohen's firm as part of the kickback scheme; (3) payments that Allied paid to Kodiak for overcharged asset searches; and (4) payments from Allied to American Construction based on fake invoices. Furthermore, the complaint: (1) suggests that the work James performed for the competitor insurance company was in breach of his duties to Allied, such that any income from that competitor belonged to Allied; and (2) explains that the kickback payments from Cohen's firm belonged to Allied because "the value of these payments should have inured to Allied [] in the form of reductions in the Cohen [firm]'s fees," Compl. ¶ 48. There is also no allegation that Kodiak or American Construction obtained funds from any source other than Allied. Thus, viewing the facts in the light most favorable to the plaintiff, Allied has plausibly pleaded that all funds in the SR5 account belong to Allied and that they were not commingled with other funds.

Even if the funds were commingled, the District Court erred in concluding that the commingling of funds defeats a conversion claim at the pleading stage. Both

---

[5] Because Allied has not pleaded that the funds were commingled, we need not address whether a bona fide purchaser defense applies to the conversion of funds in a commingled account.

Pennsylvania courts and this Circuit have established tracing rules for such situations,[6] and it is premature at this stage to rule that tracing is required or cannot be performed. See e.g., Tenco Excavating, Inc. v. First Sealord Sur., Inc., 78 A.3d 1181, 1186 (Pa. Commw. Ct. 2013) (finding that although Tenco's claims might fail under the tracing rules, it would be "premature" to dismiss those claims at the preliminary objections stage); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 102-03 (3d Cir. 1994) (remanding to give the parties the opportunity "to develop the facts" to allow for the application of the tracing rules). This is particularly relevant here, where Allied has pleaded that the funds in the SR5 account belonged to Allied and are "specific and readily identifiable" through financial records. Compl. ¶ 215.

Accordingly, the District Court erred in dismissing the conversion claim.

## B

We next examine the unjust enrichment claim. To prevail on an unjust enrichment claim, a plaintiff must demonstrate: "(1) a benefit conferred on the defendant by the

---

[6] "In attempting to trace funds, the rule in Pennsylvania is 'first in, first out,'" Tenco Excavating, Inc. v. First Sealord Sur., Inc., 78 A.3d 1181, 1185 (Pa. Commw. Ct. 2013) (quoting Commonwealth Land Title Ins. Co. v. Doe, 577 A.2d 1358, 1360 (Pa. Super. Ct. 1990)), meaning we assume that "the funds first deposited are the funds first withdrawn," In re Mushroom Transp. Co., Inc., 227 B.R. 244, 255 (Bankr. E.D. Pa. 1998). This approach has been modified by two presumptions, which together are known as the "lowest intermediate balance rule." Tenco, 78 A.3d at 1186 (citation omitted); see also In re Columbia Gas Sys. Inc., 997 F.2d 1039, 1063-64 (3d Cir. 1993). First, "if the [tortfeasor] has a choice of withdrawing from a commingled account either converted funds or legitimate funds, it will be presumed that he withdrew legitimate funds." Tenco, 78 A.3d at 1186. Second, "once the proceeds of the converted funds are spent, new deposits made are not treated as replenishing" those funds. Id.

8

plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir. 2010) (citing AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001)). "[A] claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (quoting Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)). Courts have found that even "a passive and innocent party" is unjustly enriched where she "furnished no consideration for the receipt of the [benefit]." See, e.g., Torchia, 499 A.2d at 583-84 (citation omitted); Crossgates Realty, Inc. v. Moore, 420 A.2d 1125, 1128 (Pa. Super. Ct. 1980) ("It is clear that a showing of knowledge or wrongful intent on the part of the benefited party is not necessary in order to show unjust enrichment.").

None of the grounds the District Court relied upon require dismissal. First, because we must accept the factual allegations as true and view them in the light most favorable to Allied, we cannot assume that the funds Sian received (or benefitted from) were commingled with lawfully obtained funds.

Second, the complaint alleges Sian knew that the money from the SR5 account was the result of James's fraudulent activities and thus she was not an unwitting, "passive recipient" of the funds. Allied points to two checks that Sian received from SR5 for

9

"work performed" in 2018, Compl. ¶ 88, which plausibly demonstrate Sian's knowledge of the fraudulent scheme since there would be no work to perform for an allegedly sham company. Because these allegations, taken as true, show Sian was aware of the illegitimate source of the funds and furnished no consideration for the receipt of such funds, Allied has plausibly alleged that it would be inequitable for Sian to retain Allied's money.[7]

Third, as Sian conceded at oral argument, see Oral Argument at 21:57-22:28, Allied World Ins. Co. v. Keating (Jan. 23, 2023) (No. 22-1996), https://www2.ca3.uscourts.gov/oralargument/audio/22-1996AlliedWorldOInsuranceCov.JamesKeating.mp3, the possibility that Allied could recover the funds directly from James and Cohen, and that any recovery against Sian "would constitute a double recovery for Allied," Keating, 2022 WL 742442, at *4, are issues for the district court to resolve after a determination on liability, see Hayes v. Gross, 982 F.2d 104, 109 (3d Cir. 1992) (allowing claim to proceed as long as "double recovery is not inherent in plaintiff's theory of the case," and explaining that "the district court will be required to evaluate the prospect of double recovery in the specific fact context presented by plaintiff's case on damages"); see also Nadendla v. WakeMed, 24

---

[7] Even if Sian was only a "passive recipient" of the funds, unjust enrichment claims may proceed even against unwitting parties. See, e.g., Torchia, 499 A.2d at 583-84.

F.4th 299, 308 n.6 (4th Cir. 2022) (stating that "the double recovery issue need not be addressed at the Rule 12(b)(6) stage of the proceeding").

Thus, the District Court incorrectly dismissed the unjust enrichment claim.

C

The District Court acted within its discretion when it denied Allied's motion to compel Sian to respond to discovery. See Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 354 (3d Cir. 2003). The order denying the motion to compel noted that Sian's motion to dismiss was then pending. While the District Court could have required discovery to proceed, it was reasonable to limit discovery while a Rule 12(b)(6) motion was pending, since the outcome of such a motion could impact whether and the extent to which discovery is permitted. See, e.g., Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (explaining that the purpose of Rule 12(b)(6) is to "streamline[] litigation by dispensing with needless discovery and factfinding"). Accordingly, the District Court did not abuse its discretion in denying the motion to compel.[8]

III

For the foregoing reasons, we will vacate the District Court's order dismissing the claims against Sian and affirm its order denying Allied's motion to compel.

---

[8] Because we will vacate the order dismissing the claims against Sian, the District Court has the authority to order that discovery proceed.

11